

# SUPREME COURT OF MISSOURI
## en banc

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent, | ) |
| | ) |
| v. | )   No.  SC94959 |
| | ) |
| ADRIANO RAPHAEL CLARK, SR., | ) |
| | ) |
| Appellant. | ) |

**APPEAL FROM THE CIRCUIT COURT OF WEBSTER COUNTY**
**The Honorable Donald C. Cheever, Judge**

*Opinion issued June 28, 2016*

Adriano Clark appeals his conviction of the class C felony of possession of a controlled substance. Section 195.020.[1] Following a bench trial, Mr. Clark was found guilty and sentenced to ten years in prison as a prior and persistent offender. On appeal, Mr. Clark contends the evidence was insufficient to support his conviction. The state failed to prove beyond a reasonable doubt that Mr. Clark, with knowledge of the presence and nature of the substance, had possession of two closed pouches containing methamphetamine. Accordingly, this Court reverses the trial court's judgment and remands the case to the circuit court with instructions to discharge Mr. Clark.

---

[1] All statutory references are to RSMo Supp. 2011, unless otherwise indicated.

**Factual and Procedural Background**

On February 6, 2013, Officer Jeffrey Ford responded to a 911 hang-up call from a residence in Marshfield. The call had been reported as an assault in progress. Upon his arrival at the residence, Officer Ford made contact with A.D., who appeared to have been assaulted. When Officer Ford asked her if anyone else was present in the residence, A.D. motioned with her head toward the rear of the house. Sergeant Richard Neal arrived at the residence shortly thereafter.

During the investigation of the residence, Officer Ford found Adriano Clark sitting on the side of a bed in the residence's small east bedroom, which also appeared to be the residence's main living area. Officer Ford and Sergeant Neal observed large men's tennis shoes next to the bed. A cell phone and a closed black velvet pouch were on a nightstand that was right next to Mr. Clark. The top of the nightstand was cluttered with numerous other items, including a desk lamp, two television remote controls, a coaster, a mouse pad, a used ashtray, a bottle of medication, and a glass filled with pens and other items. A larger closed brown pouch was hanging on the wall near photographs of A.D. and Mr. Clark. The contents of the two pouches were not visible to the officers, and they did not observe any drugs in plain sight.

As the officers entered the bedroom, Mr. Clark stood up and moved toward the foot of the bed. Officer Ford handcuffed and arrested Mr. Clark and then searched him.[2] The officers did not find any drugs on him. He was carrying $560, consisting of five

---

[2] The record does not reveal why Mr. Clark was arrested.

$100 bills and three $20 bills. Before being removed from the residence, Mr. Clark requested his belongings from the west bedroom of the residence. He stated that all the belongings in the west bedroom were his. According to Officer Ford, the officers later found "numerous clothes, a toolbox, [and] things of that nature" in the west bedroom.

After Mr. Clark was placed in a patrol car, A.D. gave the officers written consent to search the residence, which she said was her residence. She said Mr. Clark was her boyfriend. Detective Joseph Taylor, who obtained A.D.'s consent for the search, testified that A.D was holding a cell phone when he spoke to her.

During their search of the east bedroom, the officers opened the two pouches and found plastic bags with crystalline substances that appeared to be methamphetamine, scales, and numerous items of drug paraphernalia. The state highway patrol crime laboratory later confirmed that the crystalline substances were methamphetamine. Police did not find Mr. Clark's wallet, any identification with Mr. Clark's name on it, or any other items identified as his property in the east bedroom.

Mr. Clark was subsequently charged with the class C felony of possession of a controlled substance, punishable as a class A felony due to his status as a prior and persistent offender. Following a bench trial, the trial court found him guilty as a prior and persistent offender and sentenced him to ten years in prison. Mr. Clark appeals, contending there was insufficient evidence to prove beyond a reasonable doubt that he had knowledge and control over the drugs in the pouches. This Court granted transfer after opinion by the court of appeals. Mo. Const. art. V, sec. 10.

3

## Standard of Review

"To determine whether the evidence presented was sufficient to support a conviction and to withstand a motion for judgment of acquittal, this Court does not weigh the evidence but rather accept[s] as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignore[s] all contrary evidence and inferences." *State v. Ess*, 453 S.W.3d 196, 206 (Mo. banc 2015) (internal quotations omitted). This Court, however, "may not supply missing evidence, or give the [state] the benefit of unreasonable, speculative or forced inferences." *State v. Whalen*, 49 S.W.3d 181, 184 (Mo. banc 2001) (internal quotations omitted). Evidence is sufficient to support a conviction when "there is sufficient evidence from which a reasonable [fact-finder] might have found the defendant guilty beyond a reasonable doubt." *State v. Coleman*, 463 S.W.3d 353, 354 (Mo. banc 2015); *see also Musacchio v. United States.*, 136 S. Ct. 709, 715 (2016).

## Insufficient Evidence to Support the Conviction

Mr. Clark contends that the state did not prove beyond a reasonable doubt that he possessed the methamphetamine found in the pouches in the residence's east bedroom. Mr. Clark asserts that the state failed to prove beyond a reasonable doubt that he "knew about the drugs" or "that he exercised control over them" because the "drugs were found in closed pouches and there was no further evidence presented connecting Mr. Clark to the drugs."

Section 195.020 makes it "unlawful for any person to possess or have under his control a controlled substance." "[P]ossessed" or "possessing a controlled substance" is defined by the legislature as:

[A] person, *with the knowledge of the presence and nature of a substance*, has actual or constructive possession of the substance. A person has actual possession if he has the substance on his person or within easy reach and convenient control. A person who, although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it. Possession may also be sole or joint. If one person alone has possession of a substance possession is sole. If two or more persons share possession of a substance, possession is joint.

Section 195.010(34) (emphasis added). "When interpreting a statute, the primary goal is to give effect to legislative intent as reflected in the plain language of the statute." *Stiers v. Dir. of Revenue*, 477 S.W.3d 611, 615 (Mo. banc 2016). By the plain language of the statute, a person must have knowledge of the presence and nature of the substance to have actual or constructive possession. Section 195.010(34). In accordance with this statutory definition, this Court has long held that possession itself requires a defendant to have "conscious and intentional possession of the [controlled] substance, either actual or constructive[.]". *State v. Zetina-Torres*, 482 S.W.3d 801, 807 (Mo. banc 2016) (internal quotations omitted). "Possession without knowledge of such possession is not possession in the legal sense of the word. Knowledge of the existence of the object is essential to physical control thereof with the intent to exercise such control and such knowledge must

5

necessarily *precede* the intent to exercise or the exercise of such control." *State v. Burns*, 457 S.W.2d 721, 724 (Mo. 1970) (emphasis added) (internal citations omitted).[3]

---

[3] The interpretation of section 195.010 in the concurring opinion conflicts with the language of the statute and more than 45 years of decisions from this Court. Section 195.010 reads: "[A] person, *with the knowledge of the presence and nature of a substance*, has actual or constructive possession of the substance." (Emphasis added). The requirement of "knowledge" precedes and modifies the element of possession. As written in the statute, "knowledge" informs the element of "actual or constructive possession." This statutory language and its structure have been recognized by this Court in its prior jurisprudence, which holds that the element "actual possession" requires *conscious* knowledge and intentional possession of the controlled substance. *See Zetina-Torres*, 482 S.W.3d at 807; *Stover*, 388 S.W.3d at 146; *Withrow*, 8 S.W.3d at 80; *Purlee*, 839 S.W.2d at 587; *see also Burns*, 457 S.W.2d at 724 (interpreting section 195.020).

The concurring opinion, in fact, favorably cites the holding in *Zetina-Torres* for the proposition that "to prove possession of a controlled substance, the state must show [1] *conscious* and intentional possession of *the substance*, either actual or constructive, and [2] awareness of the presence and nature of the substance." (Emphasis added). Accordingly, as stated by the concurring opinion, the element "possession" requires "conscious and intentional possession of the substance," regardless of whether the possession is actual possession or constructive possession. Yet, in direct contradiction of the law it purports to rely on, the concurring opinion states that "a person can possess a substance without being 'conscious' of its 'existence' or 'nature.'" Based on this misstatement of law, the concurring opinion erroneously draws the conclusion that Mr. Clark "possessed" the contents of the pouches, i.e. the methamphetamine, even though, as the concurring opinion agrees, the evidence was not sufficient to establish he was conscious that the pouches contained methamphetamine. Because the analysis and conclusions drawn by the concurring opinion are diametrically opposed to the holding in *Zetina-Torres*, the concurring opinion would require *Zetina-Torres* to be overruled, despite being handed down by this Court on March 1, 2016.

Moreover, the interpretation of section 195.202 urged by the concurring opinion would lead to the absurd and unjust result that a person with no connection or intention to possess a controlled substance would be legally guilty of actual possession. Under the concurring opinion's analysis of section 195.010, if Jane Doe sits next to John Doe and puts her purse between them with a clear plastic baggie of methamphetamine visible on the top of the contents of her purse, which John sees and recognizes as methamphetamine, John would be guilty of the crime of possession of a controlled substance because he would have: (1) actual possession of the controlled substance because it was within his easy reach and convenient control, and (2) knowledge of the presence and nature of the methamphetamine. This Court's prior interpretation of the

6

A person has actual possession of a controlled substance if the person, "with the knowledge of the presence and nature of the substance," has the substance either "on his person or within easy reach and convenient control." Section 195.010(34). Here, the officers did not find any drugs on Mr. Clark when they patted him down following his arrest. Moreover, because the drugs were concealed in closed pouches, mere proximity to the drugs does not create a reasonable inference that Mr. Clark had knowledge of the presence and nature of the methamphetamine in the pouches. *See Whalen*, 49 S.W.3d at 184; *see also State v. Withrow*, 8 S.W.3d 75, 80 (Mo. banc 1999) (finding a defendant did not have actual possession of methamphetamine found in a bedroom when the police had observed the defendant exiting the bedroom). The statutory definition of "possessing a controlled substance" requires knowledge of the presence and nature of the substance as a condition precedent to a person's actual or constructive possession of the controlled substance. Section 195.010(34). Plainly stated, a person cannot control a substance if he

statute to hold that "actual possession" requires conscious knowledge and intentional possession of the controlled substance avoids this absurd result. S*ee McCollum v. Dir. of Revenue*, 906 S.W.2d 368, 369 (Mo. banc 1995) (a statute "should be interpreted to avoid absurd results").

Additionally, the legislature has amended section 195.010 several times since this interpretation of "actual possession" by the Court, but the legislature has not amended either the language or structure of this definition. Specifically, the definition of possessing a controlled substance was first included in section 195.010 in 1989. Section 195.010 has since been reenacted in 1998, 2001, and 2011, with no change in the language of the definition of possessing a controlled substance. This definition will also not be modified when the new criminal code becomes effective on January 1, 2017. 2014 Mo. Legis. Serv. S.B. 491. Accordingly, "where a court of last resort construes a statute, and that statute is afterwards re-enacted, or continued in force, without any change in its terms, it is presumed that the legislature adopted the construction given to it by the court." *State v. Grubb*, 120 S.W.3d 737, 740 (Mo. banc 2003).

7

or she is not conscious of its existence. Accordingly, Mr. Clark did not have "actual possession" of the two pouches.

"Absent proof of actual possession, constructive possession may be shown when other facts buttress an inference of defendant's knowledge of the presence of the controlled substance." *State v. Purlee*, 839 S.W.2d 584, 588 (Mo. banc 1992). The state, therefore, had the burden to prove that Mr. Clark constructively possessed the methamphetamine found in the closed pouches.

To have constructive possession of a controlled substance, a person must have both "knowledge of the presence and nature of a substance" and "the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons[.]" Section 195.010(34). Proof of constructive possession requires:

> [A]t a minimum, evidence that the defendant had access to and control over the premises where the [controlled substances] were found. Exclusive possession of the premises containing the [controlled substances] raises an inference of possession and control. When the accused shares control over the premises, as here, further evidence is needed to connect [the defendant] to the [controlled substances]. The mere fact that a defendant is present on the premises where the [controlled substances were found] does not by itself make a submissible case. Moreover, proximity to the contraband alone fails to prove ownership. There must be some incriminating evidence implying that the defendant knew of the presence of the [controlled substances], and that the [controlled substances] were under his control.[4]

---

[4] In *Withrow*, the state claimed that the defendant was guilty of taking a substantial step toward the manufacture of methamphetamine because he had possession of a bedroom and its locked closet, which contained a glass jar with a substance that was "indicative of the primary stage of methamphetamine production." 8 S.W.3d at 77. The Court found that proof of "actual or constructive possession of the materials being used to manufacture the controlled substance" would be sufficient to convict. *Id.* at 80. As in

8

*Withrow*, 8 S.W.3d at 80 (internal quotations and citations omitted*); see also State v. Stover*, 388 S.W.3d 138, 147 (Mo. banc 2012); *Glover v. State*, 225 S.W.3d 425, 428 (Mo. banc 2007). In other words, to prove beyond a reasonable doubt that a defendant who does not have exclusive control over the premises has constructive possession of a controlled substance, the state must present additional facts that "buttress the inference of the defendant's requisite mental state." *Withrow*, 8 S.W.3d at 80.

Here, Mr. Clark did not have exclusive control over the residence or the east bedroom. A.D. was present at the residence when the police arrived. She told Detective Taylor that it was her residence and that Mr. Clark was her boyfriend.[5] The officers found Mr. Clark's clothes, a toolbox and other personal items in the west bedroom of the residence. Because the premises were shared, the state was required to present additional "incriminating evidence" to support the inference that Mr. Clark had knowledge and control over the methamphetamine in the two closed pouches in the east bedroom – additional facts that would "buttress the inference of the defendant's requisite mental state." *Id*.

this case, this Court in *Withrow* based its analysis of "constructive possession" on section 195.010's definition of "possessing a controlled substance" and prior case law related to a defendant's possession of a controlled substance. *Id.* at 80-81.

[5] The relationship of Mr. Clark as A.D.'s boyfriend does not give rise to an inference that he had control over the drugs. Even "the status of husband and wife between the persons found on the shared premises amidst the contraband" does not give rise to an inference of joint control. *State v. Bowyer*, 693 S.W.2d 845, 847 (Mo. App. 1985). "The more correct analysis sees no distinction between spouses and other cotenants of premises but directs inquiry only to whether or not the accused was in a position to exercise control over the drugs found on the premises." *State v. Lowe*, 574 S.W.2d 515, 518 (Mo. App. 1978).

The state presented the following evidence in its attempt to link Mr. Clark to the drugs found in the two closed pouches in the east bedroom: (1) Mr. Clark was sitting on the side of the bed in the east bedroom next to the nightstand in close proximity to the two pouches containing the methamphetamine; (2) a large pair of men's tennis shoes was by the side of the bed where he was seated; (3) a cell phone was on the nightstand near Mr. Clark; and (4) Mr. Clark had $560 on his person, consisting of five $100 bills and three $20 bills.

The state asserts that Mr. Clark's proximity to the pouches where the drugs were found, along with the above additional incriminating evidence, was sufficient to prove that he constructively possessed the methamphetamine. Although Mr. Clark was found sitting on the bed near the two closed pouches that contained the drugs, neither "[t]he mere fact that a defendant is present on the premises" nor a defendant's "proximity to the contraband alone" proves constructive possession. *Id.*

*Withrow*, a case with facts similar to those presented here, provides guidance on this point. In that case, while the police had a suspected drug house under surveillance for a two-day period, the police observed approximately 30 persons coming and going from the house. They observed the defendant's car parked in front of a house at least twice. *Id.* at 77. The defendant entered and exited the house five or six times during this period of time. *Id.* When officers searched the house, the officers found the defendant leaving a bedroom that "emitted a solvent-like odor, commonly associated with the production of methamphetamine." *Id.* This bedroom contained weapons and numerous items used to manufacture methamphetamine, including ingredients and a milky

10

substance that was the primary stage of methamphetamine production in a locked closet. *Id.* A letter addressed to the defendant at a different address was found in another room in the house that also contained drug paraphernalia. *Id.* This Court held that "[e]ven viewed in a deferential light[,] . . . [n]othing beyond being present in the room truly connect[ed] the defendant to the manufacturing apparatus" and that the defendant's presence in the room that contained drugs did not support an inference of constructive possession. *Id.* at 81.

Likewise, in this case, because Mr. Clark had shared access to the east bedroom, his presence in the east bedroom and his proximity to the closed pouches do not support a reasonable inference that he had knowledge and control over the drugs found in the pouches. *See id.* at 80. The state asserts, however, that the totality of the evidence presented, including the presence of men's shoes and a cell phone near the drugs and Mr. Clark's possession of $560, were sufficient to prove that he constructively possessed the methamphetamine.

The state is correct that the "presence of a defendant's personal belongings in close proximity to the drugs may support an inference that he possessed the drugs." *Glover*, 225 S.W.3d at 428. But, in this case, such evidence was not sufficient. Detective Taylor testified that he believed the cell phone on the night stand near the pouches was Mr. Clark's because he thought A.D. was holding a cell phone when he spoke to her.

On this evidence, the officer was merely speculating that the cell phone belonged to Mr. Clark. Speculative inferences, however, may not be used to support a verdict. *Whalen*, 49 S.W.3d at 184. For example, in a similar case, an open manicure case that

11

contained a small baggie of methamphetamine could not be inferred to belong to a woman who shared her bedroom with her ex-husband when "the [s]tate neither presented any evidence showing to whom the manicure case belonged nor identified any characteristics of the manicure case indicating whether it belonged to a man or a woman." *State v. Tomes*, 329 S.W.3d 400, 403 (Mo. App. 2010). The defendant's sharing of the bedroom and dresser where the drugs were found was not alone sufficient to prove that she constructively possessed the methamphetamine. *Id.* at 404. As in *Tomes,* the state did not present evidence that supports a reasonable inference that the cell phone found near the methamphetamine belonged to Mr. Clark. *See id.* at 403-04. Accordingly, this Court cannot give the state the benefit of the speculative inference that the cell phone belonged to Mr. Clark. *See Whalen*, 49 S.W.3d at 184.

Likewise, even if it were reasonable to infer that the men's shoes, which were found near Mr. Clark and in close proximity to the two closed pouches containing the methamphetamine, belonged to Mr. Clark, a single pair of his shoes found near him as he was sitting on the bed was insufficient to infer the drugs were his. As discussed above, Mr. Clark's mere presence in proximity to illegal drugs does not in itself establish his knowledge or control over the closed pouches containing the methamphetamine. *Withrow*, 8 S.W.3d at 80. The fact that his shoes were near him does not establish his knowledge or control over the drugs.

The cases in which the proximity or commingling of a defendant's personal belongings supported an inference of the defendant's awareness and control of the drugs have very different facts. In *State v. Cline*, 808 S.W.2d 822, 823-24 (Mo. banc 1991),

12

methamphetamine was found in a dresser in a bedroom shared by the defendant and his girlfriend. The dresser contained only men's clothing, and the defendant was the only male living in the household. *Id.* This evidence was sufficient to support an inference that the defendant had "exclusive control over" the dresser where the methamphetamine was found. *Id.* In *Stover*, a defendant's newly purchased watch was found in a gift bag next to a suitcase containing a large amount of PCP in the trunk of a rental car shared with another passenger. 388 S.W.3d at 144-45, 148. This Court held that, because the defendant was the named customer on the rental agreement as well as the driver of the vehicle, it was reasonable for the jury to infer that the defendant "had easy access to the trunk where the drugs were found," and the proximity of his watch to the drugs "support[ed] the inference that [the defendant] had knowledge and control of the drugs." *Id.* at 148.

Additionally, an inference of a defendant's knowledge and control of illegal drugs or drug paraphernalia was also supported when: (1) a defendant's duffel bag was next to two bags of raw marijuana, *Purlee*, 839 S.W.2d at 588; (2) a defendant's birth certificate found with methamphetamine locked in a safe under a desk in attic, *State v. Richardson*, 296 S.W.3d 21, 25 (Mo. App. 2009); and (3) a defendant's wallet, driver's license, and handgun and only male hygiene items and clothing were found in the master bedroom and adjoining bathroom in a residence shared with two women and drugs were found in the bathroom, *State v. Bacon*, 156 S.W.3d 372, 378-79 (Mo. App. 2005). Unlike in these cases, a single pair of Mr. Clark's shoes next to where he was sitting in proximity to the two closed pouches containing drugs was not sufficient to support the inference that

13

Mr. Clark was either aware of or in control of the illegal drugs found in the two closed pouches.

The state further asserts that Mr. Clark's contemporaneous possession of $560, along with the other evidence, created an inference that he had knowledge and control over the methamphetamine. The state cites *State v. Jackson*, 419 S.W.3d 850, 856-57 (Mo. App. 2013), as support for its contention that the money found on Mr. Clark is incriminating evidence that would support a reasonable inference that he had knowledge and control of the drugs. In *Jackson,* the court of appeals held that "[t]he presence of large sums of money held in small denominations may be consistent with drug dealing," which may in turn be used to infer the defendant's constructive possession of illegal drugs found in a residence. *Id.* at 856.

Here, Mr. Clark was in possession of a large sum of money, but that money was not held in small denominations. Instead, he possessed five $100 bills and three $20 bills, denominations that are not indicative of drug dealing. Because Mr. Clark's possession of $560 in five $100 bills and three $20 bills does not indicate that he was dealing drugs, it likewise does not support an inference that he had knowledge or control over the methamphetamine found in the pouches. *See Whalen*, 49 S.W.3d at 184.

The totality of the facts presented by the state, and the reasonable inferences drawn from these facts, fail to show that Mr. Clark had constructive possession over the methamphetamine concealed in the closed pouches. Accordingly, no rational trier of fact could have found that the state proved beyond a reasonable doubt the essential elements of possession of a controlled substance. *See Withrow,* 8 S.W.3d at 81.

14

## Conclusion

The trial court erred in finding that there was sufficient evidence to prove beyond a reasonable doubt that Mr. Clark, with knowledge of the presence and nature of the substance, had possession of the methamphetamine found in the two pouches in the east bedroom. Although the state presented evidence that Mr. Clark had joint access to his girlfriend's residence and its east bedroom where he was found, with his shoes, in close proximity to concealed methamphetamine, this evidence was insufficient to prove beyond a reasonable doubt that he knew of the presence and nature of the drugs and the drugs were under his control as necessary to prove either actual or constructive possession of the drugs. Evidence of a cell phone on the nightstand and Mr. Clark's possession of $560 was not "additional incriminating evidence" necessary to create an inference that Mr. Clark had knowledge and control over the illegal drugs. Accordingly, this Court reverses the trial court's judgment and remands the case to the circuit court with instructions to discharge Mr. Clark.

_____
PATRICIA BRECKENRIDGE, CHIEF JUSTICE

Stith, Draper and Teitelman, JJ., concur;
Wilson, J., concurs in result in separate
opinion filed; Fischer and Russell, JJ.,
concur in opinion of Wilson, J.

15



# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,           )
                                        )

              Respondent,     )
                                          )

v.                               )     No.  SC94959
                                          )

ADRIANO RAPHAEL CLARK, SR.,   )
                                          )

              Appellant.      )

## OPINION CONCURRING IN THE RESULT

I concur in the result reached by the majority opinion, but not its reasoning.  The evidence in this case was sufficient to prove that Mr. Clark had actual possession of the two pouches and their contents, but it was not sufficient to prove that he had "knowledge of the presence and nature" of those contents, i.e., that he knew the pouches contained the controlled substance methamphetamine.  Accordingly, I would reverse Clark's conviction on that basis.

Section 195.010(34) provides that a person is in possession of a controlled substance if that person, "with the knowledge of the presence and nature of a substance, has actual or constructive possession of the substance."  As a result, to "prove possession of a controlled substance, the state must show [1] conscious and intentional possession of the substance, either actual or constructive, and [2] awareness of the presence and nature

of the substance." *State v. Zetina-Torres*, 482 S.W.3d 801, 807 (Mo. banc 2016) (quoting *State v. Stover,* 388 S.W.3d 138, 146–47 (Mo. banc 2012)).

The verdict director approved by this Court for the crime of possession of a controlled substance reflects the same two statutory elements of possession and knowledge:

> If you find and believe from the evidence beyond a reasonable doubt that:
>
> > First, that (on) (on or about) [*date*], in the (City) (County of) of _____, State of Missouri, the defendant ***possessed*** [name of the controlled substance], and
> >
> > Second, that the defendant (***knew***) (or) (***was aware***) of its presence and nature,
>
> Then you will find the defendant guilty of possessing a controlled substance.

MAI-CR 3d 325.02 (2013) (emphasis added).

As a result, it is clear that the statutory language, this Court's precedents, and the jury instruction quoted above uniformly require proof of two separate and distinct elements for the crime of possession of a controlled substance: (1) possession of a substance and (2) "knowledge of the presence and nature" of that substance. Despite this uniformity, the majority opinion blurs this distinction by calling the latter a "condition precedent" to the former.[1] Such confusion is not new. *See, e.g., Zetina-Torres*, 482

---

[1]  The flaw in the majority opinion's reasoning is encapsulated perfectly in the following: "Plainly stated, a person cannot control a substance if he or she is not conscious of its existence." Slip Op. at 7.  Because a person can possess a substance without being "conscious" of its "existence" or its "nature," section 195.010(34) does not make such possession a crime unless the state also proves that the defendant actually knew (or, in the language of the majority opinion, was "conscious") that the substance possessed was ***present*** and that it was a

2

S.W.3d at 807 ("Absent proof of actual possession, constructive possession may be shown when other facts buttress an inference of defendant's knowledge of the presence of the controlled substance.") (quoting *State v. Purlee,* 839 S.W.2d 584, 588 (Mo. banc 1992)). The majority opinion also adds to this confusion by repeated reference to *State v. Withrow*, 8 S.W.3d 75, 80 (Mo. banc 1999), which inserts into the analysis the unrelated concept of "ownership."

The question in this case is not whether the evidence was sufficient to prove that Clark physically possessed the pouches and their contents. It was. Instead, the question is whether the same evidence establishing Clark's possession of the pouches and their contents (i.e., evidence that the pouches were within his easy reach and control) also was sufficient to prove Clark actually knew of the presence and nature of the contents of those pouches, i.e., that he actually knew they contained methamphetamine. It was not, and Clark's conviction should be reversed on that basis.

The majority opinion seemingly agrees with this conclusion, Slip Op. at 7 ("because the drugs were concealed in closed pouches, mere proximity to the drugs does not create a reasonable inference that Mr. Clark had knowledge of the presence and nature of the methamphetamine in the pouches"), but holds that this constitutes a failure to prove the element of possession. In other words, the majority opinion holds that the evidence was not sufficient to prove that Clark possessed the two pouches and their contents – which were found next to the bed on which he was sitting when the officers

---

*controlled* substance. As a result, the principle stated in the majority opinion, i.e., that "a person cannot control a substance if he or she is not conscious of its existence," merely restates (in part) the element of knowledge as defined in section 195.010(34).

3

arrived – even though section 195.010(34) provides that the element of possession may be proved by evidence that the substance was on the defendant's "person" or "within easy reach and convenient control" of the defendant. Because the evidence was sufficient for a reasonable factfinder to believe that these pouches and their contents were within Clark's "easy reach and convenient control,"[2] the majority opinion's conclusion that the evidence was insufficient to prove the element of possession is incorrect.

Two illustrations may be helpful. Imagine that the pouches had been clear plastic bags or, more to the point, suppose the outside of the pouches had been emblazoned with the words: "Methamphetamine Inside!" With the addition of such evidence, the majority opinion surely would hold that the conviction was supported by sufficient evidence. But this hypothetical new evidence has no logical relevance to the element of whether Clark possessed the pouches and their contents. Instead, its only relevance is to the element of knowledge, i.e., whether Clark had "knowledge of the presence and nature" of the contents of the pouches. Because the addition of this hypothetical evidence surely would change the outcome of the majority opinion, it proves that the deficiency of the evidence actually presented in this case is that it fails to prove knowledge, not possession.

On the other hand, imagine that the evidence of possession was strengthened by evidence that the pouches were lying on the bed six inches from where Clark was sitting

---

[2]  Possession of the pouches in this case necessarily proves possession of their contents because the evidence shows both were within Clark's "easy reach and convenient control." As discussed below, however, even though this evidence reasonably supports the inference Clark knew of the presence and nature of the pouches, this evidence is not – without more – sufficient to prove Clark actually knew both that there was a substance inside the pouches and that this substance was methamphetamine.

4

when the officers first saw him (rather than lying on, or hanging above, a table "a few feet" away). If the evidence actually presented in this case was insufficient to prove the element of possession, as the majority opinion holds, then the addition of this hypothetical evidence surely would cure that deficiency. If the majority opinion agreed, then its holding would stand only for the modest proposition that the statutory definition of actual possession being "within easy reach and convenient control" of the defendant is met by distances of less than one foot but not by distances of "a few feet." However, nothing in the majority opinion suggests that this hypothetical evidence would change its result because the analysis in the majority opinion is not based upon any physical limitations on the statutory phrase "within easy reach and control." As above, therefore, this hypothetical illustrates that the result reached in the majority opinion is driven by the lack of evidence on the element of knowledge, not the element of possession.[3]

---

[3]    Similarly, the discussion of "joint possession" in the majority opinion sheds no light on whether the evidence actually presented in this case was sufficient to prove the element of possession. This is because section 195.010(34) makes it clear that guilt may be proved *either* through sole or joint possession. Instead, the significance of "joint possession" is whether evidence that proves the element of possession also is sufficient to prove the element of knowledge. When the evidence of possession is that the substance was not found on the defendant's person but within the easy reach and convenient control of the defendant *and* another person (i.e., joint possession), then the inference needed for the element of knowledge is weakened and may not be reasonable without some additional evidence from which such knowledge may be inferred. This is the hypothetical offered in the majority opinion. There, the evidence is sufficient for a factfinder to believe John was in actual possession of a purse because it was sitting next to him within his easy reach (assuming Jane did not have the purse locked or otherwise secured from John in a way that would preclude finding the purse was within John's "easy reach *and* convenient control"). But then the majority opinion's hypothetical adds the sort of evidence that was wholly lacking in the trial of this case, i.e., evidence that John had actual knowledge of the presence and nature of a controlled substance in the purse. As a result, if John were to be charged with possession of a controlled substance under such circumstances, the evidence posited in the majority opinion makes a submissible case on both the possession and knowledge elements. It is not clear why the majority opinion finds this absurd, especially given

5

To be sure, the two elements of this crime (i.e., possession and knowledge) are related. Evidence that is sufficient to prove the element of possession also may – in some cases – be sufficient to support the inference needed for the second element, i.e., that the defendant had knowledge of the presence and nature of the substance possessed. But this will not be true in every case. For example, evidence that the defendant was arrested with a controlled substance in his hand or pocket will be sufficient to prove the element of possession and – without more – normally will be sufficient to support the inference that the defendant knew of the presence and nature of the controlled substance he possessed.

But possession need not be so intimate. Under section 195.010(34), the element of possession may be proved – as it was in this case – by evidence that the substance was "within easy reach and convenient control" of the defendant, even though it was not on the defendant's "person." In such cases, however, additional evidence may be needed before the finder of fact will be allowed to infer the knowledge element, i.e., that the defendant knew the nature and presence of the substance possessed. This will be so

that this Court affirmed the conviction in *Zetina-Torres* on far less evidence. But the heavy reliance on *Withrow* throughout the majority opinion suggests that it tacitly assumes what *Withrow* expressly (though mistakenly) stated, i.e., that the possession element is equivalent to "ownership." Nothing in the plain language of section 195.010(34) supports that view.

By the same token, the discussion of "constructive possession" in the majority opinion also adds nothing to the analysis of whether the evidence was sufficient to prove the element of possession. When the substance is not found on the defendant's person or within his easy reach and convenient control, the evidence still can be sufficient to prove the element of possession if it shows that the defendant had "the power and the intention at a given time to exercise dominion or control over the substance" located somewhere else. § 195.010(34). But, as discussed below, evidence showing a substance was constructively possessed may not be sufficient – without more – to support the inference required by the knowledge element.

6

where – as here – the circumstances establishing the defendant's actual possession of a substance simply do not reasonably support the inference that the defendant knew of the presence and nature of the controlled substance he possessed.

Finally, even when the defendant does not have actual possession of the substance, evidence can be sufficient to prove "constructive possession" of a substance if it shows that the defendant had "the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons[.]" § 195.010(34). In those cases, however, evidence sufficient to establish the element of constructive possession likely will not be sufficient to support the inference required by the second element, i.e., that the defendant knew of the presence and nature of the substance. This is so because, when the element of possession is proved by facts showing constructive possession, the defendant's relationship to the substance possessed is far more attenuated than when there is proof of actual possession (i.e., when a substance is found on the defendant's person or within his easy reach and convenient control). Without more, such evidence may well be insufficient to support a reasonable inference that the defendant knew of the presence and nature of the controlled substance he constructively possessed.

Here, the evidence was sufficient to prove Clark possessed the pouches and their contents because they were within his easy reach and convenient control when the officers first observed him in the bedroom. This same evidence was not sufficient to support the inference required by the knowledge element, however, because it provides no reasonable basis from which to infer that Clark actually knew both that there was

7

something in those pouches and that the "something" was methamphetamine.

Accordingly, I would reverse Clark's conviction on that basis.[4]

_____
Paul C. Wilson, Judge

---

[4] The state does not argue that the evidence was sufficient to establish possession in this way, but this likely is the result of prior decisions that vacillate between distinguishing the elements of possession and knowledge and conflating them as done here. In any event, sufficiency of the evidence is a question of law, and the state cannot establish points of law by omission, agreement, or confession of error. *See, e.g., State v. Hardin*, 429 S.W.3d 417, 424 (Mo. banc 2014) ("The State conceded this point in its brief. Nevertheless, parties cannot stipulate to legal issues, and this Court is not bound by the Attorney General's confession of error."); *State v. Biddle*, 599 S.W.2d 182, 199 (Mo. banc 1980) ("stipulations of litigants cannot be invoked to bind or circumscribe a court in its determination of questions of law").