KURT S. ODENWALD, Judge
Introduction
Edward K. Shigemura ("Shigemura") appeals from the trial court's judgment following a jury verdict of guilty on four counts of possessing a controlled substance and one count of drug trafficking. On appeal, Shigemura raises three points. In his first two points, Shigemura contends the State presented insufficient evidence to support the jury's verdict regarding the drug trafficking and the drug possession convictions. Point Three posits that the trial court plainly erred in permitting hearsay testimony regarding a confidential-informant tip. Because the record contains sufficient evidence to support the convictions of possessing controlled substances and drug trafficking, and because Shigemura waived plain-error review of the contested hearsay testimony, we affirm.
Factual and Procedural History
Officer Patricia Vineyard ("Officer Vineyard") received a confidential-informant *738 tip that Shigemura was conducting drug activity out of his apartment, where he lived with his girlfriend, Jeri Leisure ("Leisure"). Officer Vineyard and her partner, Officer Mark Meyers ("Officer Meyers"), visited Shigemura at his apartment. The officers knocked on the door, and both Shigemura and Leisure answered. The officers asked to search the apartment, and both Leisure and Shigemura consented. Officer Meyers found a Laclede Gas bill within the apartment that was addressed only to Shigemura.
During the search, Shigemura told Leisure to grab a small hand-held portable radio that was in the living room and move it to the garage. Leisure picked up the radio. As Leisure was carrying the radio, the radio's battery plate fell off and a bag of pills tumbled out. According to the officers, Leisure appeared shocked and very surprised. The pills contained morphine, oxycodone, and amphetamine (collectively, "the pills"). The officers arrested Shigemura for possessing a controlled substance. The officers continued to search the apartment, but found no other drugs or paraphernalia.
After the search, the officers led Shigemura out of the apartment, towards the officer's vehicle; Leisure followed. As they all walked to the officers' vehicle, the officers noticed a package protruding from the Shigemura's mailbox (the "package"). Unprompted, Leisure went to the mailbox, retrieved the package, and handed it to Officer Vineyard. The package was addressed to Shigemura, was mailed from a California address, exhibited a United States Postal Service tracking number, and displayed an expected delivery date coinciding with that day. Officer Vineyard was suspicious of the package because of the package's appearance and its sender's location.
Officer Vineyard took the package to the officer's vehicle and handed it to Officer Meyers. Officer Meyers asked Shigemura if he could open the package, and Shigemura consented. Inside the package were two sealed movie containers. Officer Meyers unsealed and opened the movie containers. The containers carried vacuum-sealed packages, covered in cayenne pepper. The vacuum-sealed packages contained approximately 106 grams of methamphetamine-worth $12,000-and approximately one gram of cocaine. The State charged Shigemura with one count of second-degree drug trafficking, and four counts of possessing a controlled substance-one each for the possession of morphine, oxycodone, amphetamine, and cocaine.
At trial, Officer Vineyard testified that she initiated her investigation of Shigemura after learning about Shigmeura's potential drug activity from a confidential informant. The following exchange occurred between the State ("Q") and Officer Vineyard ("A"):
Q: And before November 30, 2015, did you receive information concerning 6644 Gravois Avenue, rear apartment?
A: Yes.
Q: And how did you receive that information without getting into specifics?
A: How did we receive information?
Q: Just generally how did-
A: There was a confidential source that told us that there was drug activity at that location, sales and.
Q: That's okay. So based on that information, what did you do next?
A: We investigated it and responded to that location on November 30th.
Shigemura did not object to the above testimony.
Shigemura cross-examined Officer Vineyard regarding the substance and timing *739 of the tip. Officer Vineyard noted that while the tip informed the officers that both Shigemura and Leisure lived together in the apartment, only Shigemura was the target of the officers' search.
Later in the trial, the State also questioned Officer Meyers about the reason he was at Shigemura's apartment on the day of Shigemura's arrest:
Q: What brought you to that location?
A: My partner and I received information from a confidential, reliable source of drug activity being conducted there and the name of the target.
Q: Okay. Who was that target?
A: The defendant.
Shigemura did not object.
Shigemura also cross-examined Officer Meyers regarding the confidential informant's tip. From Officer Meyers, Shigemura elicited testimony that Shigemura was not under surveillance or suspicion before the tip. During a sidebar, Shigemura's counsel explicitly explained his trial strategy of attempting to establish that the officers "couldn't wait to get" Shigemura "no matter what":
So I was just asking-the fact that I believe [Shigemura] was under investigation longer than a day, I believe that the officers knew who this guy was and they couldn't wait to get him and that's why I'm trying to clarify they are going to get their guy no matter what.
Following the close of all evidence, Shigemura moved for judgment of acquittal. The trial court denied Shigmeura's motion and submitted the case to the jury. The jury found Shigemura guilty on all five counts. Shigemura renewed his motion for judgment of acquittal. The trial court denied Shigmeura's motion and sentenced him to fifteen years on the drug-trafficking count, and seven years on each of the four counts of possession of a controlled substance, all running concurrent, for a total of fifteen years in prison. Shigemura appeals.
Points on Appeal
Shigemura raises three points on appeal. Point One posits that the trial court erred in denying Shigemura's motion for judgment of acquittal because the State produced insufficient evidence from which a reasonable juror could have found that Shigemura had access to, control over, and knowledge of the methamphetamine and cocaine. Point Two contends that the trial court erred in denying Shigemura's motion because the State failed to produce sufficient evidence that he possessed the morphine, oxycodone, and amphetamine. Point Three alleges that the trial court plainly erred in permitting Officers Vineyard and Meyers to testify about hearsay statements from the confidential informant that accused Shigemura of engaging in drug activity, drug sales, and receiving drug deliveries by mail.
Discussion
Shigemura's first two points on appeal contest the trial court's judgment regarding his motion for acquittal. The points are separated by the facts relating to when and where the officers found the illegal drugs. Point One focuses on the drugs discovered in the package within Shigemura's mailbox-coinciding with Shigemura's cocaine-possession and methamphetamine-trafficking convictions. Point Two examines the sufficiency of the evidence proving Shigemura's remaining possession charges-including the morphine, oxycodone, and amphetamine found within the pills that fell from the radio.
Point Three requests a plain-error review of alleged hearsay testimony at trial. Specifically, Shigemura maintains that the trial court plainly erred in allowing Officers Vineyard and Meyers to testify about *740 the substance of the confidential informant's tip.
Given the legal similarities between Points One and Two, we combine the points together for discussion below. We will discuss first the sufficiency-of-the-evidence claim regarding the drugs found in the mailbox, then the sufficiency-of-the-evidence claim pertaining to the drugs found in the radio. Point Three is discussed distinctly.
I. Points One and Two: Sufficiency-of-the-Evidence Claims
A. Standard of Review
In reviewing the sufficiency of the evidence, our review "is limited to whether the State has introduced sufficient evidence for any reasonable juror to have been convinced of guilt beyond a reasonable doubt." State v. Bateman, 318 S.W.3d 681, 686-87 (Mo. banc 2010) (quoting State v. Grim, 854 S.W.2d 403, 419 (Mo. banc 1993) ). The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the [State], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 687. We disregard contrary inferences, "unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them." Grim, 854 S.W.2d at 411. However, we "may not supply missing evidence, or give the [S]tate the benefit of unreasonable, speculative, or forced inferences." State v. Clark, 490 S.W.3d 704, 707 (Mo. banc 2016). We do not "act as a super juror with veto powers, but give[ ] great deference to the trier of fact." State v. Nash, 339 S.W.3d 500, 509 (Mo. banc 2011) (internal quotations omitted). "[T]he fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." Id. (internal quotations omitted).
B. Possession of a Controlled Substance and Drug Trafficking Elements
By its plain language, Section 195.202[1] criminalizes the possession of a controlled substance. The State must prove: "(1) conscious and intentional possession of the controlled substance ... and (2) awareness of the presence and nature of the substance." State v. Power, 281 S.W.3d 843, 848 (Mo. App. E.D. 2009) ; Section 195.010(34). "The State is not required to show actual, physical possession of the substance to establish possession, but may show constructive possession by circumstantial evidence." State v. Powell, 973 S.W.2d 556, 558 (Mo. App. W.D. 1998). "Constructive possession occurs when a defendant has the power and intention at a given time to exercise dominion or control over the substance either directly or through another person or persons." Power, 281 S.W.3d at 848 (internal quotations omitted); Section 195.010(34). "We must consider the totality of the circumstances when determining whether sufficient incriminating circumstances exist." Power, 281 S.W.3d at 848.
Section 195.223.9 criminalizes drug trafficking in the second degree if a person possesses or has under his or her control more than 30 grams of methamphetamine. Where the person possesses 90 grams or more but less than 450 grams, the second-degree drug trafficking is a class A felony. Section 195.223.9(2). To establish second-degree trafficking, the State had to prove that Shigemura (1) had conscious and intentional possession of the substances, either actual or constructive, (2) was aware of the presence and nature of the substances, and (3) possessed more than 90 grams of methamphetamine. See *741 State v. Zetina-Torres, 482 S.W.3d 801, 806-07 (Mo. banc 2016) (citing Section 195.223.9).
C. Point One: Possession of the Mailed Package
Shigemura argues that he did not actually possess the methamphetamine and cocaine because the drugs were in an unopened package, delivered that day, to an outside mailbox. Specifically, Shigemura challenges this conviction claiming insufficient evidence to show that he had knowledge of or control over the package.
"Knowledge of the presence of the substance is a condition precedent to a person's actual or constructive possession of the controlled substance." State v. Gilmore, 537 S.W.3d 342, 345 (Mo. banc 2018) (citing Clark, 490 S.W.3d at 709 ); Section 562.011.3 RSMo (2000). Because knowledge is a condition precedent to Shigemura's constructive possession of the methamphetamine and cocaine, the State was required to present sufficient evidence that Shigemura actually knew or was aware of the package's contents. Gilmore, 537 S.W.3d at 345.
"Proof of a defendant's knowledge often is supplied by circumstantial evidence of the acts and conduct of the defendant that permit an inference that he or she knew of the existence of the contraband." State v. Taylor, 407 S.W.3d 153, 160 (Mo. App. E.D. 2013). Specifically, "[a] defendant's access to the areas where drugs are found and the presence of a large quantity of drugs both support an inference of possession and control, when consistent with the totality of the circumstances." Id. (internal quotations omitted). Further, we recognize the general rule that contemporaneous possession of other drugs may be used to demonstrate knowledge of the drug's existence. See id.
Here, the officers discovered the methamphetamine and cocaine hidden in a package, mailed to Shigemura and which arrived the same day the officers were at Shigemura's home. We acknowledge that the drugs were concealed within the package and further note that the presence of the drugs in Shigemura's mailbox, alone, is not sufficient evidence to support a finding that Shigemura was aware of the package's contents. See Clark, 490 S.W.3d at 709 (finding that mere proximity to drugs, when concealed in closed pouches, does not create a reasonable inference that the defendant had knowledge of the presence and nature of the drugs). When, as here, mailboxes are accessible to the public, a significant challenge exists in proving that someone knew the contents and the existence of each and every piece of mail within their mailbox at any given moment. We therefore consider the record to determine what additional evidence, if any, the State presented to prove Shigemura's knowledge that the package mailed to him contained drugs.
First, the record contains evidence from which a jury reasonably could find that Shigemura was the only permanent resident at the apartment connected with the mailbox, Shigemura was the only person on the utility account for the apartment; the State submitted a utility bill found within Shigemura's residence with only his name on the bill. Contra id. at 710, 712 (the defendant was unaware that the drugs existed and was a guest at the residence where the officers discovered the drugs; the defendant did not possess the drugs).
Second, the record contains evidence showing that the State connected the package, and its contents, to Shigemura. The package was addressed to Shigemura, at his residence. Within the package, the officers discovered a large quantity of methamphetamine-$12,000 worth-which supports an inference of Shigemura's possession under the totality of the circumstances. See *742 State v. Smith, 850 S.W.2d 934, 944 (Mo. App. S.D. 1993) (finding sufficient evidence of drug possession where police uncovered 500 grams of marijuana hidden in a variety of locations throughout the apartment, even though there was joint possession of the apartment and the defendant had many guests the day the police discovered the drugs).
Third, the State presented evidence of other drugs found inside Shigemura's apartment. Although the other drugs-the morphine, oxycodone, and amphetamine-were found within Shigemura's home and were different types of controlled substances, the presence of these drugs allows a reasonable inference of Shigemura's knowing possession of the methamphetamine and cocaine. Contra State v. Anderson, 386 S.W.3d 186, 193 (Mo. App. E.D. 2012) (possession of marijuana on the defendant's person was insufficient to establish the possession of a minute amount of cocaine on a straw hidden in between the bed and nightstand at a hotel). Contrary to Anderson, the jury may reasonably infer Shigemura's knowledge of the far larger amount of methamphetamine from the smaller amount of drugs found within the pills hidden inside Shigemura's apartment. See id. Even though the officers discovered the methamphetamine outside Shigemura's apartment, away from the other drugs, the facts presented to the jury were consistent with the general rule that "evidence of a defendant's contemporaneous possession of other drugs or paraphernalia is relevant and admissible to demonstrate defendant's knowing and intentional possession of the controlled substance underlying the charge, particularly when both drugs are found on the defendant at the same time." Id.; see also Taylor, 407 S.W.3d at 160-61 (finding sufficient evidence for possessing heroin where the defendant's identification was found in proximity to the heroin, alongside a gun; this was further supported by more heroin and a second gun found elsewhere in the defendant's apartment). We find it difficult to believe that Shigemura was unaware that at some point, he would be receiving approximately $12,000 worth of drugs in the mail. Common sense indicates that $12,000 worth of methamphetamine does not arrive in the mail, unbidden and unbeknownst, addressed to an unsuspecting resident.
The State presented evidence to the jury both of Shigemura's residence at the apartment and his connection to the package itself. Thus, the jury reasonably could have inferred, based on the evidence, that Shigemura was aware of the drugs contained within the package. See Zetina-Torres, 482 S.W.3d at 807 ; Clark, 490 S.W.3d at 710 ; Taylor, 407 S.W.3d at 160. Moreover, our standard of review generally requires that we disregard inferences contrary to the verdict, and we find nothing in the record to suggest a departure from that standard. Grim, 854 S.W.2d at 411.
Shigemura next argues that the State did not present sufficient evidence to prove he had access to, and control over, the package and its contents. Because Shigemura did not actually possess the package when the officers discovered the drugs, Shigemura's conviction must be reversed unless the evidence presented at trial allowed the jury to find that Shigemura constructively possessed the package. See Anderson, 386 S.W.3d at 191 n.3 (quoting Section 195.010(34) ). Importantly, when a defendant shares control or access over the area in question with another, the State must proffer further evidence to connect the defendant to the controlled substance. Id. at 191. "There are several additional incriminating circumstances that would support an inference of a defendant's [ ] control of the controlled substance when joint possession exists." Zetina-Torres, 482 S.W.3d at 807 (citing *743 State v. Stover, 388 S.W.3d 138, 147 (Mo. banc 2012) ). Additional incriminating circumstances include, but are not limited to, "[f]inding a large quantity of drugs[,]" "[f]inding drugs having a large monetary value[,]" "[t]he presence of drugs in plain view[,]" and the defendant's ownership of the location where the drugs were found. Id.; see also State v. Taylor, 373 S.W.3d 513, 519 (Mo. App. E.D. 2012).
Here, although the mailbox was associated with Shigemura's apartment, the mailbox was accessible to any passersby as well as Leisure, who also stayed at the apartment. Shigemura reasons that his non-exclusive access to the mailbox precludes any finding that he constructively possessed the package. See Anderson, 386 S.W.3d at 191. We agree that had the State presented no facts other than the presence of the package in the mailbox, the evidence would not have supported a jury finding, beyond a reasonable doubt, that Shigemura possessed the methamphetamine and cocaine located within the package. However, the evidence presented to the jury was substantially more. The record shows that the State presented other information allowing a jury to reasonably infer that Shigemura exercised sufficient control over the package to prove his constructive possession of the package and its illegal contents. See Zetina-Torres, 482 S.W.3d at 807.
The package, containing 106 grams-worth approximately $12,000-of methamphetamine, was found in Shigemura's mailbox. The package was immediately noticed as the officers approached the mailbox. The package was addressed to Shigemura. When Officer Meyers presented the package to Shigemura and asked for permission to open the package; Shigemura consented to the officer's request. The very essence of Shigemura's consent supports a reasonable inference of Shigemura's belief that he had authority and control over the package. Shigemura acted consistent with ownership and control of the package and its contents. This evidence cumulatively provides enough information for the jury to reasonably infer that Shigemura exercised control over the illegal drugs. See id.
Accordingly, the State provided sufficient evidence supporting the jury's finding that Shigemura possessed the methamphetamine and cocaine found inside the package. Further, the quantity of methamphetamine found was sufficient to elevate the methamphetamine-possession to a drug-trafficking conviction. See id. at 806-07. Point One is denied.
D. Point Two: Possession of the Pills
Shigemura argues that he did not have access to or control over the pills that fell from the radio because he was seated in the kitchen and the radio-held by Leisure-was in the living room. Thus, Shigemura maintains that the State failed to produce sufficient evidence of his conviction for possessing the pills, which contained morphine, oxycodone, and amphetamine. Additionally, Shigemura contends that the State failed to show that he was aware that the radio contained the pills. We consider the totality of the circumstances in determining whether the State provided sufficient evidence of constructive possession. See Power, 281 S.W.3d at 848. Not only is Shigemura's argument unavailing, but his position is contrary to well settled case law and borders on presenting a frivolous claim.
Viewed in the light most favorable to the State, the totality of the circumstances permit the inference that Shigemura knew that the pills were inside the radio. The facts are acutely clear that Shigemura directed Leisure to move the radio. Shigemura did not tell Leisure to move anything else. Shigemura told Leisure to remove the radio from the apartment while the apartment was being searched for drugs.
*744 Shigemura knew that the officers were searching for drugs. The officers had told him and he consented to the search. This evidence reasonably allowed the jury to infer and find that Shigemura knew of the presence of the pills in the radio, and that he was trying to prevent the officers from reaching the radio and possibly find the pills. The fact that Shigemura did not anticipate his misfortune that the pills would fall from the radio in the presence of the officers does not minimize Shigemura's control over the radio and its illegal contents.
Further, it was reasonable for the jury to infer that Shigemura only told Leisure to move the radio in an attempt to conceal the pills from the officers' search. Shigemura's attempt to conceal the pills by directing Leisure to physically remove the radio from the officers' search area is evidence of Shigemura's consciousness of guilt. See State v. McKelvey, 129 S.W.3d 456, 459 (Mo. App. S.D. 2004) ; Powell, 973 S.W.2d at 559. Although Shigemura did not physically possess the pills, the State presented sufficient evidence for the jury to draw a reasonable inference that Shigemura knowingly possessed the pills and exercised control over them. See Bateman, 318 S.W.3d at 687 ; McKelvey, 129 S.W.3d at 459 ; Powell, 973 S.W.2d at 559 (finding that the defendant's efforts to hide the drugs by sliding the bag underneath the vehicle's seat as the officers approached implied a consciousness of guilt). Point Two is denied.
II. Point Three: Plain-Error Review of Alleged Hearsay Testimony
Shigemura claims trial court error over the alleged hearsay testimony of Officers Vineyard and Meyers regarding the substance of the confidential informant's tip. Shigemura did not object to this testimony at trial. Where a party fails to object, plain-error review is available under Rule 30.20.[2] See State v. Kunonga, 490 S.W.3d 746, 755 (Mo. App. W.D. 2016). Rule 30.20 authorizes us, in our discretion, to review "plain errors affecting substantial rights ... when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Shigemura bears the burden of proving plain error. Kunonga, 490 S.W.3d at 755.
We review claims of plain error under a two-prong standard. Id. (quoting State v. McClendon, 477 S.W.3d 206, 216-17 (Mo. App. W.D. 2015) ). "In the first prong, we determine whether there is, indeed, plain error, which is error that is evident, obvious, and clear." Id. (internal citation omitted). If we find an "evident, obvious, and clear" error, then we look to the second prong, where we consider whether "a manifest injustice or miscarriage of justice has, indeed, occurred as a result of the error." Id. Where a jury renders a verdict, "[t]o hold that a miscarriage of justice or a manifest injustice occurred, we must determine that there is a reasonable probability that the jury's verdict would have been different, had the error not taken place." Id. (quoting State v. Roper, 136 S.W.3d 891, 903 (Mo. App. W.D. 2004) ).
Shigemura contends that the trial court committed plain error when it allowed Officers Vineyard and Meyers to testify regarding their confidential informant's tip. Specifically, Shigemura submits that this testimony was impermissible hearsay, amounting to plain error. We will not address the substance of Shigemura's point because the record clearly shows that Shigemura elicited the controversial testimony he now challenges as part of his trial strategy. Accordingly, Shigemura has *745 waived his right to seek even plain-error review.
Plain-error review is waived if the defendant, through his or her "counsel [ ] affirmatively acted in a manner that precludes a finding that the failure to object was due to 'inadvertence or negligence[,]' " or "it is clear that counsel acted for a trial strategy reason[,]" State v. McElroy, 520 S.W.3d 493, 495-96 (Mo. App. W.D. 2017) (citing State v. Johnson, 284 S.W.3d 561, 582 (Mo. banc 2009) ); State v. Marr, 499 S.W.3d 367, 377 (Mo. App. W.D. 2016). Furthermore, if the defendant's counsel elicited the controversial evidence, the trial court could not have committed plain error for declining to sua sponte exclude the evidence. State v. Clay, 533 S.W.3d 710, 718 (Mo. banc 2017).
We note that the record shows that the State initiated the questioning of Officers Vineyard and Meyers regarding the confidential informant's tip. But the record is equally clear that Shigemura's counsel elicited the majority of the substance of the tip during his cross-examination of the officers. The State simply asked the officers what led them to investigate Shigemura's residence. Shigemura's counsel further examined the officers and extracted the information as to when the tip took place, who the tip implicated, and whether the tip provided additional information that the officers did not already know. The record shows that Shigemura deliberately elicited these further details in his attempt to show the jury that the officers were predetermined to arrest Shigemura and that Leisure was instead responsible for the crimes.
Following his trial strategy, Shigemura allowed the limited testimony regarding the tip throughout the State's direct examination, and then actively elicited additional testimony about the tip during cross examination. Shigemura cannot now complain of his chosen trial strategy on appeal. See Marr, 499 S.W.3d at 377. Shigemura is not entitled to complain about testimony which, although originally introduced by the State, was reiterated and expanded upon by his own counsels cross-examination. Nor is Shigemura permitted to complain of prejudice from testimony his counsel made cumulative through his questioning. See State v. Campbell, 122 S.W.3d 736, 742 (Mo. App. S.D. 2004).
Because Shigemura reiterated the allegedly erroneous testimony on cross-examination and expanded the subject through further questioning as part of his trial strategy, we refuse to apply plain-error review to correct his invited errors. See Clay, 533 S.W.3d at 718 ; Marr, 499 S.W.3d at 377. Point Three is waived.
Conclusion
The judgment of the trial court is affirmed.
Robert G. Dowd, Jr., P.J., concurs.
Sherri B. Sullivan, J., concurs.

All Section references are to RSMo (Cum. Supp. 2013) unless otherwise noted.

All Rule references are to Mo. R. Crim. P. (2015).