

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent,** | ) | **WD76966** |
| | ) | |
| **v.** | ) | **OPINION FILED: October 27, 2015** |
| | ) | |
| **UMAR MUHAMMAD,** | ) | |
| | ) | |
| **Appellant.** | ) | |

### Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Peggy Stevens McGraw, Judge

Before Division One:  Anthony Rex Gabbert, Presiding Judge, Victor C. Howard, Judge
and Cynthia L. Martin, Judge

Umar Muhammad ("Muhammad") appeals his convictions of second-degree murder, first-degree assault, and two counts of armed criminal action following a jury trial.  Muhammad claims that errors during closing argument and in the admission of evidence at trial made it less likely that the jury would accept his defense that he was not the shooter, an essential element of his crimes.  Finding no error, we affirm.

## Factual and Procedural Background

Muhammad does not challenge the sufficiency of the evidence to sustain his convictions. [Appellant's Brief, p. 14, n. 5] That evidence, viewed in the light most favorable to the jury's verdict,[1] was as follows:

On May 19, 2011, at approximately 3:45 a.m., Muhammad shot and killed Mohamed Hussein ("Hussein") at a park in Kansas City, Missouri. Just prior to the shooting, Hussein was in a car with Anwar Ali ("Ali"). Muhammad was near the park entrance with two men when he saw Hussein and exclaimed "Bird, Bird, that's them." The two men with Muhammad were Seneca Keith ("Keith"), whose nickname was "Bird," and Jermaine Henderson ("Henderson"). Ali and Hussein heard Muhammad's statement, which prompted Hussein to get out of the car and walk toward the three men. Ali got out of the car to urge Hussein to return. Muhammad shot Hussein. Hussein began running. Ali was five feet away at the time and saw Muhammad shoot Hussein. Ali had met Muhammad on two prior occasions and recognized him. Ali did not know the other two men with Muhammad.

After firing several more shots at Hussein, Muhammad began firing at Ali, who ducked and took cover inside the car. After the shots stopped, Ali lifted his head and saw Muhammad and the other two men running into the park.

Ali drove his car to the location where Hussein had fallen. Ali drug Hussein to the car. Keith and Henderson (who had at first fled the scene) ran back to assist Ali.

---

[1]In determining whether a criminal conviction is supported by sufficient evidence, we view the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Miller*, 372 S.W.3d 455, 463 (Mo. banc 2012).

However, Hussein died at the scene. The bullets recovered from Hussein's body and from Ali's car where determined to have been fired from the same weapon, although that weapon was never recovered.

Muhammad and Hussein had been in a dispute just hours before the shooting at a gas station close to the park. A police officer who responded to that scene observed that Muhammad was wearing a black "do rag" and a black jacket with white "KC" insignias. In a dash cam photograph of that scene, the officer could not distinguish the "do rag" from a black baseball cap.

Ali told officers that Hussein's shooter was wearing a black hoodie and a black baseball cap. Ali described the shooter as "the Egyptian dude." Muhammad is Egyptian. Ali identified Muhammad as the shooter in a color photo lineup several hours after the shooting. Ali also identified Keith as the person Muhammad had called "Bird" at the scene. Ali testified at trial that he was "[one] hundred percent sure" that Muhammad was the shooter.

Following his arrest, Muhammad first denied being at the park, then admitted being at the park though at a different time than the shooting. Later, Muhammad admitted being at the park almost every day. He admitted knowing Hussein and admitted that he had been involved in an altercation with Hussein, though he claimed it had been several days earlier. Muhammad claimed he was at his sister's at the time of the shooting, though she never corroborated this alibi. Muhammad did not testify at trial, but his defense at trial centered on suggesting that Keith was the shooter.

3

The jury convicted Muhammad and recommended sentences which the trial court imposed.

Muhammad appeals.

## Analysis

Muhammad raises four points on appeal. Three of the points claim error in connection with the State's closing argument. One of the points claims error in the admission of evidence. With respect to all four points, Muhammad concedes that there was sufficient evidence to support his convictions but argues that, but for the errors addressed in the points, the "defense may have carried the day or had a more significant chance of success" in persuading the jury that Muhammad was not the shooter. [Appellant's Brief, p. 14, n. 5] Because establishing that Muhammad was the shooter was an essential element of his charged crimes, Muhammad claims he was prejudiced. We address Muhammad's points individually.

## Point One

In his first point on appeal, Muhammad argues that the trial court abused its discretion when it allowed the State to argue during its rebuttal closing, and over Muhammad's objection, that a key witness's trial testimony implicating Keith had not been previously reported to the police.

We review a trial court's decisions in the control of closing arguments for an abuse of discretion. *State v. Forrest*, 183 S.W.3d 218, 226 (Mo. banc 2006). Improper closing argument will not support reversal, however, unless the error is prejudicial. *Id*. To be "prejudicial," the improper argument must have had "'a decisive effect on the jury's

determination.'" *State v. Armentrout*, 8 S.W.3d 99, 111-12 (Mo. banc 1999) (quoting *State v. Hall*, 982 S.W.2d 675, 683 (Mo. banc 1998)). Muhammad has not met this burden. *State v. Steele*, 314 S.W.3d 845, 851 (Mo. App. W.D. 2010) (observing that a defendant has the burden to establish prejudice associated with improper closing argument).

The portion of the State's rebuttal closing about which Muhammad complains involved a discussion of the trial testimony of Tyra Anderson ("Anderson"). To afford context to the rebuttal closing, and to Muhammad's objection, we must first summarize Anderson's trial testimony.

The State called Anderson as a witness during its case-in chief. On direct examination, Anderson testified that she lived in an apartment building near the park where Hussein was killed. Anderson knew Keith, having previously dated him. Anderson also knew Muhammad and Henderson. Anderson testified that on the morning of the shooting, she awoke to loud voices, leaned out her bedroom window, and could clearly see Muhammad, Keith, and Henderson near the park entrance. She heard gunshots and ducked. She then saw Keith run from the scene in one direction, while Muhammad and Henderson ran in a different direction. Anderson did not testify that she saw who shot Hussein. Anderson did, however, see Hussein fall to the ground and saw Ali drive to that location, where Ali got out of the car crying. Anderson testified that she ran outside and then spoke with the police when they arrived at the scene. She testified that she later went to police headquarters where she made a statement and identified Muhammad, Keith, and Henderson from a photo lineup. The State did not ask Anderson

5

any further questions about the content of her statements to the police at the scene or police headquarters.

On cross examination, Muhammad established through Anderson that Keith was wearing a black hoodie at the time of the shooting and that Anderson saw Keith return to the scene to assist Ali with Hussein after first running away. Muhammad then asked Anderson the following:

> Q:     Shortly after the shooting, you hear [Keith] yell something, correct?
>
> A:     Yes.
>
> Q:     And what you hear him yell is -- and I don't [sic] that this is offensive, but you hear him yell, "Bitch ass nigga, I got you, I got you?"
>
> A:     Yes.
>
> Q:     And he was saying this towards the direction of the car or [Hussein]?
>
> A:     Correct.

Mohammad did not ask Anderson whether she told the police about Keith's statement. The State did not redirect Anderson.

> During closing argument, Muhammad argued:
>
> [T]he State is asking you to find [Muhammad] guilty of murder. Everything you heard yesterday--you heard within hours of [Hussein] being shot and killed over two years ago, Officer Moore arrived at the scene and from the moment he got there, he was told that [Keith] was involved, that the shooter was wearing a black pullover hoodie and a black baseball cap and [Keith] is arrested . . . right there. **Officer Moore spoke with [Anderson] at the scene. She was available to them immediately.** They want you to rule out [Keith] because Officer Moore told you that he was never charged and a case was never submitted to the prosecutor's office because they didn't have any evidence which linked [him] to the shooting. **Ladies and gentlemen, they had everything that you saw yesterday. And I've been able to point out to you two things now that the evidence points**

6

> *to [Keith] overwhelmingly more than it points to [Muhammad]. But they let [Keith] go*. . . . Ladies and gentlemen . . . you cannot be firmly convinced in this case. . . . [Keith] is the shooter. He should be the person who is sitting in court today.

(Emphasis added.) The plain implication of Muhammad's closing was that Anderson had told police at the scene of the shooting everything about which she had testified at trial, including the statement she heard Keith make as he fled the scene.

> During rebuttal closing argument, the State argued:

> [F]or [Muhammad] to get up here and say everything that was presented here in front of you yesterday, the police department knew the night this happened, is not true. [Muhammad's counsel] talked to you about what [Anderson] said when she talked to Officer Moore. Two years ago when this case occurred . . . and [Anderson] was standing right there, she is not---

At this point, Muhammad objected: "[f]acts not in evidence. We didn't say anything about what [Anderson] told [Officer Moore]." The State responded that its argument was "retaliatory" (responsive) to Muhammad's argument that "they had everything" because "[Anderson] did not say that to Officer Moore. She did not tell that to police the night of the homicide." In response, Muhammad argued: "Which there is no evidence of. You can't argue facts not in evidence." The trial court overruled Muhammad's objection. The State continued its rebuttal argument as follows:

> [Anderson] did not tell the police that she heard [Keith] say that. Two years ago, she did not tell the officer that [Keith] said, "I got you" . . . . Two things, right? That statement . . . and this clothing thing. And I'll get to the clothing thing in a minute. But when she is coming in here and she is saying it now and she is going to say well the police department knew that and they let the real killer go . . . . You cannot expect the police department or the prosecutor's office or the law to take care of [Keith] when all of the sudden we are going to hear this two years later.

7

It is the State's rebuttal closing following the trial court's denial of Muhammad's objection about which Muhammad complains on appeal.

On appeal, Muhammad raises two distinct concerns with the State's rebuttal argument. First, Muhammad argues that the State's rebuttal closing argument addressed facts not in evidence, thus depriving him of his constitutional right to confront witnesses. Second, Muhammad complains that the State's argument was not truthful because it was contrary to information in the State's possession.

With respect to the first issue, the trial court did not abuse its discretion in overruling Muhammad's objection that the State's rebuttal closing addressed "facts not in evidence." The State explained that its argument was "retaliatory" or responsive to Muhammad's closing where Muhammad clearly argued that Anderson had spoken with police at the scene and had told them everything the jury heard from her at trial. In fact, neither the State nor Muhammad elicited *any* evidence from Anderson about what she told the police, whether at the scene or in her later statement at police headquarters. However, because Muhammad's closing suggested this had been the evidence, it was within the trial court's discretion to permit the State to make a responsive argument. *State v. Bryant*, 741 S.W.2d 797, 799 (Mo. App. E.D. 1987) ("[I]t is well recognized that a prosecutor is permitted to exceed the normally recognized limits of closing argument in retaliation to defense counsel's argument."); *State v. Parker*, 886 S.W.2d 908, 922 (Mo. banc 1994) ("A prosecutor has considerable leeway to make retaliatory arguments at closing.") On appeal, Muhammad's point relied on supplements his trial objection with the additional argument that in overruling his objection, the trial court deprived him of

8

his constitutional right to confront a witness. This constitutional claim was not raised at trial and is not preserved for our review. Moreover, though Muhammad mentions the constitutional argument in his point relied on, he fails to develop the claim in the argument portion of his Brief, thus abandoning the claim. *State v. Nunley*, 341 S.W.3d 611, 623 (Mo. banc 2011).

Muhammad's second concern is that the State's rebuttal closing was factually inaccurate. Muhammad explains in his Brief that in fact Anderson *did* tell the police about Keith's statement during her video-taped statement given hours after the shooting at police headquarters. Though this additional basis for objecting to the State's rebuttal closing was raised in Muhammad's motion for new trial, it was not raised as an objection at trial, and is thus not preserved. *State v. Letica*, 356 S.W.3d 157, 167 (Mo. banc 2011); *Nelson v. Waxman*, 9 S.W.3d 601, 605 (Mo. banc 2000) ("A party is not permitted to advance on appeal an objection different from that stated at trial."). At best, Muhammad is entitled to plain error review of this unpreserved claim of error. *Id*.; Rule 30.20.[2] "This Court will exercise its discretion to conduct plain error review only when the appellant's request for plain error review establishes facially substantial grounds for believing that the trial court's error was 'evident, obvious, and clear,' and 'that manifest injustice or miscarriage of justice has resulted.'" *State v. Jones*, 427 S.W.3d 191, 195 (Mo. banc 2014) (quoting *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2007)).

During argument on Muhammad's motion for new trial, the State defended Muhammad's claim that its rebuttal closing was contrary to available evidence by arguing

---

[2]All citations to the Rules are to *Missouri Court Rules Volume I--State* (2015).

that the rebuttal closing responded only to Muhammad's suggestion that Anderson had reported Keith's statement to Officer Moore *at the scene of the shooting*. No available evidence indicated that to be the case. The trial court sought clarification and asked the State "was 'that statement' [ever] given to the police?" The State responded that "[i]t was given to the police later on that evening in the video-taped statement down at headquarters. It was not given at the scene."[3] [Tr. 643-44] The trial court denied the request for a new trial.

On appeal, the State once again argues that its rebuttal closing only responded to Muhammad's suggestion that Anderson told Officer Moore about Keith's statement *at the scene of the shooting*, an argument that was not inconsistent with the available evidence. Though that may well have been the State's intent at the time of trial, a plain reading of the State's rebuttal closing reveals that the State argued the broader proposition that Anderson *never* told authorities about the statement she attributed to Keith and first reported Keith's statement two years after the shooting during her trial testimony. This argument was not consistent with the available evidence.

However, that fact alone does not establish a basis for plain error review. In arguing his motion for new trial, Muhammad conceded that Anderson's video-taped statement was "evidence that was available" to everyone prior to trial. [Tr. p. 644] We

---

[3]In its Brief on appeal, the State emphasizes that though Muhammad has the burden to prove trial court error, and despite the apparent importance of Anderson' video-taped statement to his claims of error, Muhammad did not submit the video-tape to the trial court in connection with his motion for new trial and did not include the video-tape in his record on appeal. Ordinarily, we are permitted to infer from the failure to include items in the record on appeal that are essential to a claim of error that the missing information would not be favorable to the appellant's claim of error. *State v. Brumm*, 163 S.W.3d 51, 56 (Mo. App. S.D. 2005). Here, however, the State conceded that Anderson reported Keith's statement to the police during her video-taped statement given hours after the shooting.

are left to speculate why Muhammad did not use or refer to the video-taped statement during his cross-examination of Anderson, or why Muhammad did not simply ask Anderson on cross-examination whether and when she reported to the police what she heard Keith exclaim. More to the point, we are left to speculate why Muhammad failed to object that the State's rebuttal closing was contrary to the available evidence, an objection that is materially different from an objection that closing argument exceeds the facts actually in evidence. Muhammad has not established the facial showing of evident, obvious, or clear error, and we thus decline to review for plain error under Rule 30.20. *Jones*, 427 S.W.3d at 195-96. It is highly relevant to our conclusion that although Muhammad admits that Anderson's video-taped statement was available evidence at the time of trial, he never referred to the statement during Anderson's testimony, he did not object to the State's rebuttal closing by referencing the statement, and he never provided the trial court or this court with Anderson's statement, suggesting a strategic motivation. *State v. Johnson*, 284 S.W.3d 561, 573 (Mo. banc 2009) (holding that "[r]arely is plain error relief granted for a closing argument claim, absent an objection, because it may be a strategic decision by counsel").

Even were we to presume evident, obvious, and clear error based solely on the fact that the State's rebuttal closing misstated the evidence available to both the State and the defendant, reversal would not be warranted unless the error resulted in a manifest injustice or a miscarriage of justice. *State v. Severe*, 307 S.W.3d 640, 642 (Mo. banc 2010). "Plain error review of a closing argument . . . will be considered only if there is a sound, substantial manifestation, a strong, clear showing, that injustice or miscarriage of

11

justice will result if relief is not given." *Johnson*, 284 S.W.3d at 573 (quotation omitted). This standard has not been met. Ali testified that he was 100% certain that Muhammad, a man he had met twice before, and a man who shot Hussein and shot at Ali from five feet away, was the shooter. Muhammad concedes that this evidence was sufficient to support his convictions. Several witnesses placed Muhammad at the scene of the shooting, including Anderson, despite Muhammad's reports to the police that he had an alibi and was not in the park when Hussein was shot. Muhammad fled the scene after the shooting, while Keith and Henderson returned to assist Ali and Hussein. Muhammad denied having been involved in an altercation with Hussein just hours before the shooting even though police had dash cam video from that scene which captured Muhammad wearing clothes similar to those later described by Ali. The fact that Keith was wearing a black hoodie at the time of the shooting, and that Ali had been unable to positively identify Muhammad from a black and white photo array during his deposition two years after the shooting, were developed and emphasized by Muhammad's counsel at trial in an effort to suggest that Keith was the shooter. The jury heard Anderson's testimony about Keith's statement as he fled the shooting. Yet, the jury was not persuaded to disregard Ali's testimony that he was "100% sure" that Muhammad was the shooter. Though we do not condone the State's rebuttal closing,[4] we simply are not persuaded that the State's rebuttal closing had a "decisive effect on the jury's determination" or resulted in a manifest injustice or a miscarriage of justice warranting reversal based on plain error

---

[4]We are not suggesting that the State's mischaracterization of the available evidence during its rebuttal closing was purposeful, and Muhammad has never suggested or demonstrated otherwise. Whether or not purposeful, the State's rebuttal closing was not proper argument.

12

review. *Johnson*, 284 S.W.3d at 573-74 (holding that plain error during closing requires the defendant to prove that the argument had a decisive effect, established by reviewing the whole record and not just an isolated segment of the record).

Point One is denied.

## Point Two

In his second point on appeal, Muhammad argues that the trial court committed plain error when it failed to declare a mistrial or to give a curative instruction during closing argument after the State made a reference to what Muhammad was going to "say two years later" to address whether he was present at the scene of the shooting. When the State made this statement, Muhammad timely objected, and the State immediately agreed it "shouldn't have said 'say,'" and asked to "rephrase," which the trial court permitted it to do. The State continued its argument "on unobjectionable lines." [Appellant's Brief, p. 28] Muhammad did not ask for a mistrial or for a curative instruction.

"Our review for plain error of a trial court's failure to *sua sponte* declare a mistrial is extremely limited." *State v. Durham*, 371 S.W.3d 30, 37 (Mo. App. E.D. 2012). Here, the State's comment about what Muhammad was going to say, two years after the shooting, about whether he was in the park at the time of the shooting must be viewed in context. The comment followed the State's summary of the testimony of several witnesses who placed Muhammad in the park, at which point the State commented on Muhammad's requested instruction that mere presence at the scene is not enough to convict by saying "well which is it? Was the defendant there or wasn't he? Now is he going to say two years later that he was there?" The jury had heard police officer

13

testimony that Muhammad repeatedly denied being in the park at the time of the shooting. The State's closing argument was not a direct reference to Muhammad's failure to testify at trial but was instead a comment on the relative weakness of Muhammad's case. *See State v. Richardson*, 923 S.W.2d 301, 314 (Mo. banc 1996).

The trial court did not commit plain error in failing to *sua sponte* declare a mistrial or provide a curative instruction during the State's closing argument.

Point Two is denied.

### Point Three

In his third point on appeal, Muhammad claims the trial court erred when it permitted the State during its closing argument, and over Muhammad's objection, to discuss the meaning of "reasonable doubt" by suggesting that the jury use common sense in weighing the evidence.

During closing, the State argued as follows:

> Now, we have all heard about reasonable doubt in jury selection to [sic]. I just want to remind you that this is a doubt based on reason and common sense. We ask you to leave your outside prejudices and things that you have known from outside and things that you might think you know about the area or life experiences, leave this at the door. But don't check your common sense. When you go into deliberation . . . .

Muhammad objected that the State's argument misstated the law and improperly reduced its burden of proof. The State responded that it was simply arguing the reasonable doubt jury instruction. Muhammad's objection was overruled. The State's argument continued:

> So use your common sense. That is what the instruction says to do. Use your common sense when you are looking at all the evidence. In addition, you need to be firmly convinced while using your instructions and your collective memory of the evidence.

14

Muhammad claims on appeal that the State's argument misstated the law and improperly reduced its burden of proof. "An attorney is free to discuss reasonable doubt during closing argument, but he cannot attempt to define reasonable doubt." *State v. Williams*, 659 S.W.2d 778, 781 (Mo. banc 1983) (internal citations omitted). Here, the jury was instructed on reasonable doubt as follows:

> A reasonable doubt is a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case.
>
> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. The law does not require proof that overcomes every possible doubt. If, after your consideration of all the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you will find him guilty. If you are not so convinced, you must give him the benefit of the doubt and find him not guilty.

During its closing argument, the State referenced the ability to use common sense as well as the jury's obligation to be firmly convinced of Muhammad's guilt. We see nothing in the State's closing argument other than a proper reference to "reasonable doubt" as the jury was instructed. This case is distinguishable from *Williams* where the State argued that the jury need only determine whether the evidence established guilt "beyond reason and common sense," and that the jury need only determine whether "common sense" told the jury that sexual intercourse with a victim was with consent or by force. 659 S.W.2d at 781. In contrast, in this case, though the State properly referenced the jury's right to rely on its common sense, as the instruction so directs, the State did not in any manner suggest that the jury could do so to the exclusion of its obligation to be firmly convinced of Muhammad's guilt.

15

Point Three is denied.

## Point Four

In his fourth point on appeal, Muhammad argues that the trial court erred when it failed to *sua sponte* declare a mistrial or give a curative instruction after it allowed a police detective to testify that charges were not sought against two other suspects in Hussein's murder.

During its case-in-chief, the State questioned Police Detective Matthew Williams ("Williams") as follows:

Q:	Henderson and . . . Keith are both arrested that night?

A:	Yes.

Q:	And they are transported down to headquarters?

A:	Correct.

Q:	[T]hey [are] talk[ed] to either by you or other detectives in your squad?

A:	Yes.

Q:	[Were] they fully investigated as potential suspects in this case?

A:	I would say so.

Q:	And were requests for charges ever presented to the prosecutor's office on either . . . Keith or . . . Henderson?

A:	No.

Q:	Why not?

16

A:      Because we developed other evidence to say they were not involved

[as the shooter].

Muhammad argues that Williams's testimony deprived him of a fair trial because it violated mandatory criminal jury instructions MAI-CR 300.02 and MAI-CR 302.04. Both MAI-CR 300.02 and MAI-CR 302.04 provide that "[t]he charge of any offense is not evidence, and it creates no inference that any offense was committed or that the defendant is guilty of an offense."  Muhammad claims on appeal that Williams's testimony created the inference that Muhammad committed second-degree murder, first-degree assault, and armed criminal action because he was charged with those crimes and other suspects were not.  Muhammad did not object to Williams's testimony at trial on this or any other basis.  Muhammad acknowledges in his brief that this point is not preserved for appellate review and can only be reviewed, if at all, for plain error.  We have already described our standard for plain error review.

Muhammad has not established that Williams's testimony injected evident, obvious, and clear error into his trial.  Muhammad has presented no authority for the proposition that testimony about whether charges were sought against other suspects who are neither witnesses nor co-defendants violates jury instructions MAI-CR 300.02 and MAI-CR 302.04.  Indeed, a plain reading of MAI-CR 300.02 and MAI-CR 302.04 indicate both instructions refer only to charges filed *against the defendant on trial*.

Even were we to presume evident, obvious, and clear error, Williams's testimony did not result in manifest injustice or a miscarriage of justice.  Muhammad relied on the same testimony during his closing argument to argue that police investigators rushed to

17

justice in concluding that Muhammad murdered Hussein. Muhammad cannot claim a manifest injustice or a miscarriage of justice occurred from Williams's purportedly inadmissible testimony when he relied on the same testimony to bolster his defense that Keith was the shooter. "A trial court does not plainly err when it fails to *sua sponte* prohibit the introduction of objectionable evidence when the totality of the surrounding circumstances reflect a clear indication that trial counsel strategically chose not to object to the evidence." *State v. D.W.N.*, 290 S.W.3d 814, 825 (Mo. App. W.D. 2009).

In any event, even if, as Muhammad suggests, the jury did infer that Muhammad committed the crimes because other suspects were not charged, MAI-CR 300.02 and MAI-CR 302.04 cured that negative inference. Both jury instructions specifically state that "[t]he charge of any offense is not evidence, and it creates no inference that any offense was committed or that the defendant is guilty of an offense." Accordingly, "we assume the jury obeyed the trial court's directions and followed its instructions*." Christian v. State*, 455 S.W.3d 523, 528 (Mo. App. W.D. 2015) (internal quotations omitted). It is hard to fathom how a *sua sponte* curative instruction regarding Williams' testimony would have aided the jury since the curative instruction would have recited essentially the same directive to the jury already found in MAI-CR 300.02 and MAI-CR 302.04.

Point Four is denied.

### Conclusion

Muhammad's convictions are affirmed.

Cynthia L. Martin

_____
Cynthia L. Martin, Judge

All concur.