

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI, )  *Opinion issued January 17, 2017*
)
      Respondent, )
)
v. ) No. SC95818
)
RANDY E. TWITTY, )
)
      Appellant. )

## APPEAL FROM THE CIRCUIT COURT OF ST. CHARLES COUNTY
### The Honorable Richard K. Zerr, Circuit Judge

Randy E. Twitty was found guilty in a court-tried case of possession of a chemical with the intent to manufacture a controlled substance. On appeal, Twitty argues the circuit court erred by entering judgment against him because the State did not present sufficient evidence that he possessed pseudoephedrine at the time detectives searched his residence. The circuit court's judgment is affirmed.

## Standard of Review

"In reviewing the sufficiency of the evidence in a court-tried criminal case, the appellate court's role is limited to a determination of whether the [S]tate presented sufficient evidence from which a trier of fact could have reasonably found the defendant guilty." *State v. Vandevere*, 175 S.W.3d 107, 108 (Mo. banc 2005). "The evidence and all reasonable

inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005).

## Facts

A detective assigned to the St. Charles County Drug Task Force was reviewing the National Precursor Log Exchange ("NPLEX") for suspicious pseudoephedrine purchases when he noticed that Debra Galebach had purchased an unusually large amount of pseudoephedrine: four purchases within 38 days, including a purchase made earlier that day. Three task force detectives went to Galebach's residence that day to ask her about these purchases and to determine if she still had the pills in her possession. Two detectives went to the front door, while a third detective went to the back of the residence and looked inside through a sliding glass door. Twitty answered the front door and, when asked to identify himself, he told the detectives his name was "Bobby."[1]

After the two detectives told Twitty they were there to discuss pseudoephedrine purchases made earlier that day, Twitty told them to wait outside while he secured his dog. Twitty closed the front door and went back inside. The detective watching through the sliding glass door then saw Twitty go into the kitchen and tear up cold-medicine boxes and blister packs. Twitty lifted up trash already in the trash can and put the pieces he had just torn under the other trash. Twitty then returned to the front door and let the two detectives waiting at the door inside the residence. Twitty consented to a search of the

---

[1] Twitty later revealed his real name. He explained that he lied about his name because he was on probation.

2

residence, and inside the trash can, detectives found torn pieces of two cold-medicine boxes and empty blister packs. Writing on the front of the boxes said "Wal-Phed D" and "Pseudoephedrine Hydrochloride." The empty blister packs, which had contained 40 pills (20 in each box), also had the words "Pseudoephedrine Hydrochloride" written on them.[2] Police also found a Walgreens bag used for packaging pharmacy purchases and two Walgreens cash-register receipts showing Wal-Phed D purchases made at 9:23 A.M. and 9:57 A.M. that day. No pseudoephedrine was found inside the residence.

During an interview inside his residence, Twitty told detectives that: he and Galebach had each purchased one box of Wal-Phed D earlier that day; after Galebach left for work, he opened the Wal-Phed boxes and removed the pills from their blister packs; he then drove to a commuter lot where he traded the pseudoephedrine pills to an unnamed third party in exchange for a quarter gram of methamphetamine and $50; after making the trade, he drove to a park and smoked all the methamphetamine; he had purchased and then traded pseudoephedrine for methamphetamine three times that month; and he had placed the boxes and blister packs in the trashcan.

The State charged Twitty, acting in concert with another, with possession of a chemical (i.e., pseudoephedrine) with the intent to create a controlled substance (i.e., methamphetamine). Twitty waived his right to a jury trial. After overruling Twitty's motion for judgment of acquittal at the close of the State's evidence and his motion for judgment of acquittal at the close of all evidence, the circuit court found Twitty guilty of

---

[2] The lot numbers on the blister packs matched the lot numbers shown on NPLEX, indicating that the boxes and blister packs found in Twitty's trashcan were the ones purchased earlier that day.

the charge. The circuit court found Twitty was a prior and persistent felony offender and sentenced him to five-years' imprisonment. Twitty appealed, and after an opinion by the court of appeals, this Court transferred the case pursuant to article V, § 10 of the Missouri Constitution.

**Analysis**

"It is unlawful for any person to **possess** chemicals listed in subsection 2 of section 195.400 . . . with the intent to manufacture, compound, convert, produce, process, prepare, test, or otherwise alter that chemical to create a controlled substance . . . in violation of sections 195.005 to 195.425." Section 195.420, RSMo 2000 (emphasis added). The General Assembly defined the word "possess" to mean:

> [A] person, with the knowledge of the presence and nature of a substance, has actual or constructive possession of the substance. A person has actual possession if he has the substance on his person or within easy reach and convenient control. A person who, although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it.

Section 195.010(34), RSMo Supp. 2013. "To prove possession of a controlled substance, the state must show conscious and intentional possession of the substance, either actual or constructive, and awareness of the presence and nature of the substance." *State v. Stover*, 388 S.W.3d 138, 146–47 (Mo. banc 2012). "Proof of a defendant's knowledge often is supplied by circumstantial evidence of the acts and conduct of the defendant that permit an inference that he or she knew of the existence of the contraband." *Id.* at 147.

Twitty challenges only the element of possession in § 195.420. In his sole point on appeal, Twitty argues the circuit court erred by entering judgment against him because

4

the State did not present sufficient evidence that he possessed pseudoephedrine *at the time* detectives searched his residence. According to Twitty, because no pseudoephedrine was found in the residence and all that was found were empty boxes of Wal-Phed, empty blister packs, and receipts that corresponded to the boxes and purchases reported on NPLEX, the State could prove only that he possessed pseudoephedrine *prior to the search* but could not prove that he possessed pseudoephedrine *at the time of the search*. This is a distinction without a difference—nothing in the relevant statutes limits the concept of possession to possession at the time of search or arrest. *See* §§ 195.420, 195.010(34).[3]

The evidence established that Twitty actually possessed pseudoephedrine on the date of the offense (August 29, 2013), irrespective of the fact that no pseudoephedrine was found at his residence at the time the detectives conducted their search.[4] The record shows, among other things, that Twitty admitted he and Galebach had each purchased one box of Wal-Phed cold medicine, which contained pseudoephedrine, earlier that day. He also admitted that he opened the boxes, removed the pills from their blister packs, and drove to a commuter lot where he traded the pills for methamphetamine and $50. His confession

---

[3] "This Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *Parktown Imps. v. Audi of Am.*, 278 S.W.3d 670, 672 (Mo. banc 2009).

[4] Nothing in § 195.010(34) suggests that the State cannot prove actual possession unless law enforcement officers successfully seize the controlled substance from the defendant's person or within the defendant's easy reach and control when the defendant is arrested or when the premises are searched. If this Court adopted Twitty's reasoning, evidence establishing that a police officer observed a defendant flush 40 pseudoephedrine pills down the toilet would be insufficient to prove actual possession because the officer did not seize the pills themselves. Criminal defendants could always avoid culpability even if the evidence overwhelmingly suggests possession of a controlled substance on the date of the offense. The General Assembly could not have intended such an absurd result. *See State ex rel. Heartland Title Servs. v. Harrell*, 500 S.W.3d 239, 243 (Mo. banc 2016).

was corroborated by, among other things, the presence of empty and torn-up Wal-Phed boxes and blister packs found in his trash can. The packaging showed that the contents of the packages contained pseudoephedrine hydrochloride. Receipts showed purchases of two boxes of Wal-Phed cold medicine—one at 9:23 A.M. and the other at 9:57 A.M.—, and NPLEX recorded two pseudoephedrine purchases consistent with what was shown on the receipts.

A reasonable inference drawn from these circumstances is that Twitty actually possessed pseudoephedrine on the date of the offense. Any inference to the contrary is disregarded on review. *Belton*, 153 S.W.3d at 309. As such, there was evidence from which a trier of fact could have reasonably found Twitty possessed pseudoephedrine and thus could have reasonably found Twitty guilty of possession of a chemical with the intent to manufacture a controlled substance.

### Conclusion

The circuit court's judgment is affirmed.

_____
Zel M. Fischer, Judge

Breckenridge, C.J., Stith, Draper, Wilson and Russell, JJ., concur.