

# In the Missouri Court of Appeals
# Eastern District

**DIVISION THREE**

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED108253 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Washington County |
| vs. | ) | |
| | ) | Honorable Wendy L. Wexler Horn |
| BRENDA THURMOND, | ) | |
| | ) | |
| Appellant. | ) | FILED: October 6, 2020 |

## Introduction

Brenda Thurmond ("Thurmond") appeals from the trial court's judgment following a jury trial convicting Thurmond of possession of a controlled substance. In Point One, Thurmond contends the trial court plainly erred in failing to sua sponte interrupt the State's comments during voir dire which Thurmond argues minimized the beyond-a-reasonable-doubt standard. In Point Two, Thurmond argues the trial court erred in denying her motion for a judgment of acquittal at the close of all evidence because insufficient evidence showed Thurmond was aware of the presence and the nature of the methamphetamine found in her purse. In her final point on appeal, Thurmond maintains the trial court plainly erred in allowing the State to argue that Thurmond's exercise of her right to trial made her an unsuitable candidate for probation and in considering that argument in its decision to impose a seven-year sentence and deny probation.

Because the State did not improperly define the beyond-a-reasonable-doubt standard during voir dire, the trial court did not plainly err in declining to sua sponte interject. Because

the record contains sufficient evidence that Thurmond actually possessed the methamphetamine and was aware of its presence and nature, sufficient evidence supported her conviction such that the trial court did not err in denying her motion for a judgment of acquittal. Because the record does not show that Thurmond was sentenced and denied probation because she exercised her right to trial, the trial court did not engage in improper retaliatory sentencing. Accordingly, we affirm the judgment of the trial court.

Factual and Procedural History

Viewing the evidence in the light most favorable to the jury's verdict, State v. Gilmore, 537 S.W.3d 342, 344 (Mo. banc 2018), on December 18, 2015, police officers arrived at Thurmond's residence with an arrest warrant for a third party. Thurmond allowed the police officers into her home to search for the wanted individual, whom the police officers failed to locate. However, during the search, the police officers came to believe there were narcotics or narcotic paraphernalia in the residence. Thurmond consented in allowing the police officers to search the residence for narcotics.

During their search of the apartment, police officers found three glass smoking pipes with residue, two digital scales, and a container with multiple plastic bags. The container found was of the type often used to store narcotics. One of the pipes was found in plain view on the kitchen table. The kitchen was a small room just inside the front door of the residence. A purse was on the kitchen table and Thurmond told the police officers the purse belonged to her. Thurmond consented to the police officers' search of her purse. The police officers found two plastic bags containing methamphetamine in Thurmond's purse. Thurmond was in the kitchen at the time the officers searched her purse.

2

Thurmond's son lived at the residence with Thurmond. The record contains no evidence that anyone other than Thurmond and her son lived at or had been staying at the residence, or that anyone other than Thurmond was present at the residence during the search.

In September 2018, the State charged Thurmond with one count of possession of a controlled substance for knowingly possessing methamphetamine with knowledge of its presence and nature.

The case proceeded to trial. During voir dire, the State discussed the beyond-a-reasonable-doubt standard:

> Now, as the -- as the Court explained earlier, briefly, and you'll get a jury instruction on this, but the State's burden of proof in this case is proof beyond a reasonable doubt. But that does not mean proof beyond all doubt. Now, is there anybody here who believes that burden of proof is not strong enough? In other words, is there somebody here who believes I should have to prove it beyond a shadow of a doubt or 200 percent or any other thing you've got in your mind other than what the judge said?

No venire-person responded. The State continued, also eliciting no response:

> Is there anybody here who believes that proof beyond a reasonable doubt is not a strong enough standard to hold the State to? If so, please raise your hand . . . .

> All right. On the other side, is there anybody here who believes that's too high? That, you know, we ought to be able to convict somebody of a crime on a lower standard than that? If so, please raise your hand.

The State elaborated further:

> Now, you have to remember that these are common sense English instructions. This isn't magic. It's not legal mumbo-jumbo. Okay. You're going to be given instructions that tell you what to do. And these are all things you can do in your regular life.

> You can evaluate the credibility of a witness. You're doing it a hundred times a day, every time you interact with somebody. Okay.

> You're asked to find whether or not you're firmly convinced of something, whether or not you believe it beyond a reasonable doubt. Again, you do that kind of thing all the time. It's not a magic thing you only do in court. It is something that you

3

are being called on your common sense to determine whether you are firmly convinced, okay.

That's all you're being asked to do with following that jury instruction. It's -- it's -- it's not as difficult as any lawyer can make it sound with all the embellishment.

Thurmond did not object and the State moved off of the subject.

Following trial, the jury found Thurmond guilty of possession of a controlled substance.

The sentencing assessment report ("SAR") recommended Thurmond receive probation.

At sentencing, the State recommended a seven-year sentence and, contrary to the SAR, argued against probation:

And I think from the State's point of view, probably the most telling thing about all this, because the SAR, I do want to address it, they came back and they said, well we think you should put her on probation and put her in the drug court in Crawford County.

And the most telling thing to me is that after we had this trial, you may remember this, Judge, or you asked about bond. And we basically agreed that we were going to raise her bond because of the guilty verdict.

. . . .

And she decided just to pay the extra money rather than to let anyone supervise her activities.

And that to me is very telling, because I think she very clearly did not want anyone monitoring her, making her do drug tests, anything like that. She doesn't want to change her life. She has no interest in that.

And I, for my part, over a year before the trial, had recommended drug court if she had wanted it and had wanted to get help. But you cannot force somebody to get help.

And the reality is she goes and she has a trial. That's her right to do. But, you know, don't come to me now and say, well, I should get a chance to try to get clean on probation or go to drug court or whatever, when you didn't want help.

It was like pulling teeth, even in that SAR it sounds like to get her to open up about any kind of drug problem that she ever had, even unrelated to the charges that were pending before us.

4

Following this argument, the trial court noted that Thurmond had three other pending cases and asked the State how it believed those pending cases should affect the court's decision regarding Thurmond's eligibility for probation. The State responded that in light of the other cases, even if the sentencing court was to follow the SAR, "I don't think in the long run it's probably doing [Thurmond] very much of a favor[.]" Thurmond proceeded to argue in favor of probation. The trial court concluded:

> Ms. Thurmond, I am sorry. I do not think you are a good candidate for probation. And a lot of this is because I don't know what's going on with you right now, but you've got way too much stuff going on all over the place. So I don't know what's going on. But I -- but I think that you are not a good candidate for probation. I'm sorry. I'm following the State's recommendation on this today.

The trial court sentenced Thurmond to seven years in prison without probation. This appeal follows.

## Points on Appeal

In Point One, Thurmond asserts the trial court plainly erred in failing to sua sponte correct the State's minimization of the beyond-a-reasonable-doubt standard during voir dire. In Point Two, Thurmond argues the trial court erred in denying her motion for a judgment of acquittal because there was insufficient evidence to show that Thurmond was aware of the presence and nature of the methamphetamine found in her purse. In Point Three, Thurmond claims the trial court plainly erred in allowing the State to argue that Thurmond's exercise of her right to trial made her an unsuitable candidate for probation and in considering that argument in its decision to impose a seven-year sentence and deny Thurmond probation.

## Discussion

**I.     Point One—The State's Discussion of the Burden of Proof**

Thurmond first challenges the State's commentary during voir dire regarding its burden of proof. Thurmond maintains that the trial court committed reversible plain error by failing to

5

sua sponte interrupt the State when the State seemingly minimized its burden of proving

Thurmond's guilt beyond a reasonable doubt.

A.      Standard of Review

Thurmond did not object to the State's comments about the standard for its burden of

proof during voir dire. Because Thurmond raised no objection, Point One is not preserved, and

we may only review it for plain error. See Rule 30.20;[1] State v. Muhammad, 478 S.W.3d 468,

474 (Mo. App. W.D. 2015) (citing State v. Letica, 356 S.W.3d 157, 167 (Mo. banc 2011))

(additional citation omitted). We will only reverse if the trial court committed "evident, obvious,

and clear error" that resulted in "manifest injustice or a miscarriage of justice[.]" State v.

Campbell, 600 S.W.3d 780, 788–89 (Mo. App. W.D. 2020) (internal quotation omitted); See

Rule 30.20. Thurmond must prove that the State's alleged misstatements of the beyond-a-

reasonable-doubt standard "had a decisive impact on the outcome of the trial." State v. Dorsey,

318 S.W.3d 648, 655 (Mo. banc 2010) (internal citation omitted).

B.      Analysis

 "Arguments by prosecutors attempting to define reasonable doubt represent reversible

error." State v. Rhodes, 988 S.W.2d 521, 527 (Mo. banc 1999) (internal citation omitted).

"However, brief remarks purporting to define 'reasonable doubt,' although improper, do not

result in reversible error so long as counsel does not unduly dwell upon the definition." Id.

(internal quotation omitted). Furthermore, the mere discussion of the beyond-a-reasonable-doubt

standard as opposed to attempting to define the standard is not improper. Campbell, 600 S.W.3d

at 795–96 (citing State v. Overkamp, 646 S.W.2d 733, 738 (Mo. banc 1983)) (additional

citations omitted). Finally, we note that "[g]enerally, when the jury is provided with the correct

---

[1] All Rule references are to Mo. R. Crim. P. (2020).

6

trial court instructions giving the definition of reasonable doubt it cures any harm from an erroneous statement of reasonable doubt by the prosecutor." State v. Green, 307 S.W.3d 197, 202–03 (Mo. App. S.D. 2010) (internal citations omitted) (reviewing precedent set by the Supreme Court of Missouri).

The State initially questioned the venire-persons about whether they believed the beyond-a-reasonable-doubt standard was either not a sufficiently burdensome standard of proof or too burdensome of a standard. We find this line of questioning to be more akin to a discussion of the burden of proof, rather than a definition. See Campbell, 600 S.W.3d at 795–96 (internal citations omitted). Accordingly, the comments in question were appropriate and potentially helpful in identifying venire-persons who were willing and able to conform their decision-making to the proper burden of proof as instructed by the trial court. See id.

Next, the State's comments that venire-persons would be able to use their common sense in determining whether the beyond-a-reasonable-doubt standard was satisfied was neither incorrect nor erroneous. See Muhammad, 478 S.W.3d at 478 (citing State v. Williams, 659 S.W.2d 778, 781 (Mo. banc 1983)) (distinguishing appropriate statements regarding the jurors' use of common sense in determining whether the beyond-a-reasonable-doubt standard is satisfied from inappropriate statements that the jurors only need be convinced of the defendant's guilt based on their common sense).

We agree with Thurmond that the State was ill-advised to remark that application of the beyond-a-reasonable-doubt standard was the "kind of thing" people do "all the time." However, we decline to find error in the trial court's failure to address this statement. See State v. Harper, 553 S.W.2d 895, 898 (Mo. App. Springfield 1977). The two Missouri cases upon which Thurmond relies in arguing otherwise, in fact, undermine Thurmond's argument. See id.; Green,

7

307 S.W.3d at 202. Specifically, <u>Harper</u> found no error, plain or otherwise, regarding statements that the beyond-a-reasonable-doubt standard was "not an impossible burden" and was a "very realistic burden[.]" <u>Harper</u>, 553 S.W.2d at 897–98. Additionally, while <u>Green</u> found that posing hypotheticals about reasonable doubt was impermissible during voir dire, <u>Green</u> did not hold it was inappropriate to call the beyond-a-reasonable-doubt burden an "everyday" standard. <u>Green</u>, 307 S.W.3d at 202. Moreover, we find the State's reference to using "common sense" too cursory to constitute reversible error, even if the statement were inappropriate. <u>See Rhodes</u>, 988 S.W.2d at 527.

Furthermore, the record shows that the primary focus of the State's comments regarding the burden of proof was that venire-persons should follow the trial court's instructions when selected for the jury. Indeed, we generally presume that a jury follows the trial court's instructions. <u>See State v. McFadden</u>, 391 S.W.3d 408, 421 (Mo. banc 2013). Thurmond does not allege that the trial court's instructions were incorrect. Thus, even if the State's voir dire discussion on its burden of proof were improper, the trial court's burden-of-proof instructions to the jury would have cured the resulting error. <u>See Green</u>, 307 S.W.3d at 202–03 (internal citations omitted). Finally, we also note that Thurmond has not demonstrated on appeal that the State's discussion of the beyond-a-reasonable-doubt standard "had a decisive impact on the outcome of the trial." <u>See Dorsey</u>, 318 S.W.3d at 655.

Despite our conclusions that no error occurred and that the State did not attempt to define reasonable doubt in this specific case, we feel compelled to emphasize that our courts have "roundly criticized" the practice of attempting to define reasonable doubt. <u>State v. Thompson</u>, 985 S.W.2d 779, 791 (Mo. banc 1999) (internal citations omitted). The State "flirt[s] with disaster" not only when it erroneously attempts to define reasonable doubt, but even when only

8

discussing the supposed meaning or application of reasonable doubt.  See State v. Morris, 680 S.W.2d 315, 317 (Mo. App. S.D. 1984).  Certainly the State may question venire-persons about their willingness to follow the trial court's instructions on the issue, as the State did here.  Beyond that, however, the State risks the reversal of convictions by violating our decades-old decree against discussing the meaning or application of reasonable doubt during voir dire.  See id. ("It is past time that state counsel take cognizance of such practices, totally terminate them and eliminate the problems thus ensuing to trial and appellate courts.").

Because the record in this case demonstrates the State did not improperly offer a definition of the burden of proof and appropriately directed venire-persons to follow the trial court's instructions, the trial court did not plainly err by declining to sua sponte interrupt the State during voir dire.  See Campbell, 600 S.W.3d at 788–89, 795–96.  Point One is denied.

## II.    Point Two—Possession of Methamphetamine

In her second point on appeal, Thurmond contends that insufficient evidence supported finding that Thurmond either actually or constructively possessed the methamphetamine found in her purse with knowledge of the methamphetamine's presence and nature.

### A.    Standard of Review

In reviewing challenges to the sufficiency of the evidence, we do not reweigh the evidence.  Instead, we accept as true all evidence and reasonable inferences tending to support a verdict of the defendant's guilt, and conversely ignore all contrary evidence and inferences.  Gilmore, 537 S.W.3d at 344 (internal citation omitted).  "[E]vidence is sufficient to support a conviction when there is sufficient evidence from which a reasonable fact-finder might have found the defendant guilty beyond a reasonable doubt."  Id. (internal quotation omitted).  We "may not supply missing evidence, or give the State the benefit of unreasonable, speculative or forced inferences."  Id. at 344–45 (internal quotation omitted).

9

B.    Analysis

"To prove possession of a controlled substance, the state must show conscious and intentional possession of the substance, either actual or constructive, and awareness of the presence and nature of the substance." State v. Twitty, 506 S.W.3d 345, 347 (Mo. banc 2017) (internal quotation omitted); see also Section 195.010(34).[2]  The State must prove two elements: (1) actual or constructive possession, and (2) knowledge of the presence and nature of the substance.  See Gilmore, 537 S.W.3d at 344–45 (internal citation omitted); State v. Shigemura, 552 S.W.3d 734, 740 (Mo. App. E.D. 2018) (internal citations omitted).

"A person has actual possession if he has the substance on his person or within easy reach and convenient control."  Section 195.010(34); State v. Goff, 439 S.W.3d 785, 792 (Mo. App. S.D. 2014) (internal citation omitted).  Constructive possession requires, at minimum, "evidence that the defendant had access to and control over the premises where the controlled substances were found."  State v. Clark, 490 S.W.3d 704, 709 (Mo. banc 2016) (internal quotation omitted).  "Exclusive possession of the premises containing the controlled substances raises an inference of possession and control."  Id. (internal quotation omitted).  When the premises is shared, constructive possession requires further incriminating evidence tending to show the defendant knew of the controlled substances and that the controlled substances were under the defendant's control.  Id. at 709–10.

Generally, in cases of actual possession, knowledge of the presence and nature of a controlled substance is reasonably inferred.  State v. Gillum, 574 S.W.3d 766, 769–70 (Mo. App. S.D. 2019) (internal citation omitted); but see Gilmore, 537 S.W.3d at 346 (holding that even if there is actual possession based on proximity there must be some incriminating evidence that the

---

[2] All Section references are to RSMo (2016).

defendant knew of and had control of the controlled substance). In cases of constructive possession, "[p]roof of a defendant's knowledge often is supplied by circumstantial evidence of the acts and conduct of the defendant that permit an inference that he or she knew of the existence of the contraband." Twitty, 506 S.W.3d at 347 (internal quotation omitted).

Thurmond argues the State did not adduce sufficient evidence to prove actual possession, and that, at best, the case against Thurmond is one of constructive possession because Thurmond was at most merely in proximate vicinity to her purse. We are guided by the clear holdings of our courts which state that the element of actual possession is satisfied by showing the contraband was within "easy reach and convenient control." Section 195.010(34); Goff, 439 S.W.3d at 792. The record shows that when the police officers requested permission to search the purse, Thurmond was near her purse, which was located on the nearby kitchen table. Thurmond concedes this fact. The record contains no evidence of any obstacle preventing Thurmond from simply reaching for her purse or exercising control over it. For this reason, we hold the record contains sufficient evidence that Thurmond actually possessed the purse and the methamphetamine in the purse. Section 195.010(34); Goff, 439 S.W.3d at 792. We note that Thurmond at times appears to be arguing that she was not sufficiently close to the purse *at the time of the search* to establish possession. Assuming this argument as true, the law does not require that actual possession occur during the search. See Twitty, 506 S.W.3d at 348 (allowing the permissible inference that the defendant possessed pseudoephedrine on the date of the offense where the evidence suggested the defendant had possessed it earlier that day, even where the search did not produce any pseudoephedrine). The jury could have drawn a reasonable inference that Thurmond was sufficiently close to the methamphetamine in her purse to possess

11

it at some point prior to the search, especially given the facts showing how close she was to her purse when the officers asked for her permission to search the purse.  See id.

We are persuaded that the State proved a case of actual possession given Thurmond's proximity to the purse and the lack of any facts suggesting that Thurmond did not exercise convenient control over the purse, which she conceded belonged to her.  Given the additional incriminating evidence—namely, the methamphetamine being found in Thurmond's own purse, the smoking pipe found in plain view next to Thurmond's purse, and the additional drug paraphernalia found throughout Thurmond's residence—the facts, when viewed in the light most favorable to the State, overwhelmingly satisfy the second element that Thurmond have knowledge of the presence and nature of the methamphetamine found in her purse.  See Gilmore, 537 S.W.3d at 346; Gillum, 574 S.W.3d at 769–70.

We further note that, even if this were, as Thurmond maintains, a case of constructive possession arising out of a shared premises, the record contains sufficient evidence that Thurmond knew of the methamphetamine, knew of the methamphetamine's nature, and had control of the methamphetamine.  See Twitty, 506 S.W.3d at 347; Clark, 490 S.W.3d at 709. The methamphetamine was in Thurmond's purse, which was sitting on the same table as a glass smoking pipe in plain view, in a kitchen which Thurmond presumably could routinely access. See Shigemura, 552 S.W.3d at 742 (citations omitted) (stating contemporaneous possession of drug paraphernalia supports a finding that the defendant knowingly possessed the controlled substance); State v. Stephens, 482 S.W.3d 499, 502 (Mo. App. S.D. 2016) (internal quotation omitted) (stating routine access to the area where the controlled substance is located and commingling of the controlled substance with the defendant's personal belongings supports a finding of constructive possession).

12

When viewing the evidence in the light most favorable to the verdict, the record contains sufficient evidence that Thurmond actually possessed the methamphetamine with knowledge and awareness of the methamphetamine's nature, and therefore sufficient evidence supported Thurmond's conviction for possession of a controlled substance. See Gilmore, 537 S.W.3d at 344; Twitty, 506 S.W.3d at 347. Point Two is denied.

## III. Point Three—Retaliatory Sentencing

In her third point on appeal, Thurmond claims the trial court plainly erred in permitting the State to reference Thurmond's decision to proceed to trial during sentencing and considering the State's remarks about Thurmond exercising her right to trial in its sentencing, thereby engaging in retaliatory sentencing.[3]

### A. Standard of Review

Because Thurmond did not object during sentencing, we are limited to plain-error review as discussed supra in Point One. See Rule 30.20; Muhammad, 478 S.W.3d at 474 (citing Letica, 356 S.W.3d at 167).

### B. Analysis

Trial courts are to consider "all the circumstances," including "the history and character of the defendant," when sentencing a defendant. Section 557.036(1). However, a trial court may not enhance a defendant's sentence in any respect due to the defendant's constitutionally-safeguarded decision to proceed to trial. Goodwater v. State, 560 S.W.3d 44, 54–55 (Mo. App. W.D. 2018) (internal citations omitted). In order to show that the trial court impermissibly

---

[3] In her reply brief, Thurmond puts forth a second, different argument for why the trial court's sentencing decision was inappropriate. Then, during oral argument, Thurmond put forth a third argument as to why sentencing was inappropriate. With few exceptions not applicable here, we do not consider allegations of error not properly briefed on appeal, and therefore we decline to consider these new, alternative arguments. See Rule 30.20. We note that even if we were to review these unpreserved arguments, we would be reviewing them for plain error given they were not raised in Thurmond's initial brief or in her motion for new trial. See id.; Rule 29.11(d).

13

punished the defendant for exercising their right to trial, the defendant must not show merely the "bare possibility" that the sentencing court inappropriately retaliated, "but rather must show words stated by or attributed to the trial court directly connecting the imposition of enhanced sentencing to the exercise of a constitutional right." Johnson v. State, 552 S.W.3d 768, 776 (Mo. App. E.D. 2018) (internal quotation omitted). We view the sentencing court's comments in the context of the entire sentencing proceeding. See State v. Collins, 290 S.W.3d 736, 747 (Mo. App. E.D. 2009). Additionally, references to the defendant's decision to exercise their right to trial are not inappropriate when not retaliatory in nature but are instead made as part of an assessment of an appropriate consideration. See id. (finding sentencing was not retaliatory where the sentencing court referenced the defendant's decision to proceed to trial and maintain their innocence because the reference was in the context of discussing the defendant's continued refusal to accept responsibility).

Thurmond's argument hinges on whether the trial court improperly considered the State's reference to Thurmond's decision to forgo drug court and instead proceed to trial. First, we are not persuaded that the State's reference to Thurmond's decision to proceed to trial was inappropriately retaliatory in nature, because the State's comments were part of a larger, appropriate argument that Thurmond consistently had opposed being placed on supervision and consistently denied having any sort of drug problem, making her a poor candidate for probation. See id.; Section 557.036(1). Second, even if the State's mention of Thurmond's decision to go to trial was inappropriate, Thurmond has not made the required showing of statements *made by or attributable to the trial court* directly connecting her denial of probation to her decision to proceed to trial. See Johnson, 552 S.W.3d at 776.

Nevertheless, Thurmond argues that the reason for the trial court's denial of probation is unclear, and therefore this case should be remanded. Thurmond relies upon Greer v. State, 406 S.W.3d 100, 110 (Mo. App. E.D. 2013), where we remanded the matter because the sentencing court's reasoning was not "readily discernible." Thurmond misinterprets Greer; we did not remand in Greer merely due to the uncertainty of the sentencing court's reasoning. In Greer, the sentencing court affirmatively made alarming statements suggesting that it was not willing to give defendants sentences shorter than their pretrial recommendations if they exercised their right to trial. See id. at 109–10. Unlike the present case, in Greer, "words stated by or attributed to the trial court," reasonably could have been understood as "directly connecting the imposition of enhanced sentencing to the exercise of a constitutional right." See Johnson, 552 S.W.3d at 776 (internal quotation omitted). Such statements by the trial court are lacking here. A reasonable and rational interpretation of the trial court's comments that "I don't know what's going on with you right now, but you've got way too much stuff going on all over the place," addresses the trial court's realistic and practical concern that Thurmond was not a good candidate for probation—nothing more. The record lacks any statement by the trial court suggesting that its decision to impose a seven-year sentence and not grant probation was influenced in any way by Thurmond's exercise of her right to a jury trial. Point Three is denied.

Conclusion

The judgment of the trial court is affirmed.

_____
KURT S. ODENWALD, Judge

Angela T. Quigless, P.J., concurs.
James M. Dowd, J., concurs.

15